**MICHAEL N. FEUER,** City Attorney - SBN 111529
**THOMAS H. PETERS,** Chief Assistant City Attorney – SBN 163388
**CORY M. BRENTE,** Assistant City Attorney – SBN 115453
**SUREKHA A. SHEPHERD,** Deputy City Attorney – SBN 193206
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-7036
Fax No.: (213) 978-8785
Email: Surekha.Shepherd@lacity.org

Attorneys for Defendants, **CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, MONICA QUIJANO, RICHARD TAMEZ** and **SCOTT SMITH**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUIS LORENZO VARGAS,

Plaintiff,

v.

CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; COUNTY OF LOS ANGELES; OFFICE OF THE LOS ANGELES DISTRICT ATTORNEY; LOS AGELES SHERIFF'S DEPARTMENT; MONICA QUIJANO; RICHARD TAMEZ; and DOES 1-10 INCLUSIVE,

Defendants.

**CASE NO. CV16-08684 SVW (AFMx)**
*Hon. Stephen V. Wilson, Ctrm. 10A*
*Mag. Alexander F. MacKinnon, Ctrm. H, 9th Fl.*

**DEFENDANTS MONICA QUIJANO AND SCOTT SMITH'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION (L.R. 7-18)**

[Filed concurrently with the Declaration of Surekha A. Shepherd and Exhibits; Appendix of State Court Cases; Proposed Order]

**DATE: OCTOBER 1, 2018**
**TIME: 1:30 P.M.**
**CTRM: 10A**

**TO THIS HONORABLE COURT, PLAINTIFF AND HIS COUNSEL:**

Pursuant to *School District No. IJ, Multnomah County, Or v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011), as well as Local Rule 7-18, Defendants Monica Quijano and Scott Smith seek reconsideration of the Court's order dated August 7, 2018 (PACER document no. 142), denying the remainder of their Motion for Partial Summary Judgment.

Efforts to resolve these matters by way of a meet and confer on August 20, 2018, were unsuccessful. (Shepherd Declaration, paragraph 6)[1]

1. This Court committed clear error by concluding that the unsolved investigations at issue were 'material' for purposes of *Brady* in 1999. (*Smith v. Almada*, 640 F.3d 931, 940 (9th Cir. 2011));

2. This Court committed clear error by failing to grant the request for qualified immunity based on *Smith v. Almada*, 640 F.3d 931(9th Cir. 2011));

3. This court committed clear error in concluding that unsolved, so-called similar crimes are *Brady* material and 'automatically' discoverable by the defense. (see *People v. Littleton* (1992), 7 Cal.App. 4th 906, 911; *Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005)(prosecutor not required to turn over files reflecting leads or ongoing investigations, which fail to contain exonerating or impeaching information); see also *Sweaney v. Ada County*, 119 F.3d 1385, 1388 (9th Cir. 1997));

4. This Court committed clear error when it concluded that unsolved, unrelated sexual assault investigations would have been automatically admissible at Plaintiff's 1999 sexual assault trial. (*People v. Hall* (1986) 41 Cal.3d 826, 832);

5. This Court committed clear error in failing to conduct a particularized qualified immunity analysis based on the specific facts of this case. The unsolved investigations at issue are not *Brady* material and in the alternative, the law was not 'clearly established' during the relevant time period in light of *Smith v. Almada*, 640 F.3d 931(9th Cir. 2011), *Kisela v. Hughes*, 584 U.S. ___ (2018) and *White v. Pauley*, 137 S. Ct. 548 (2017);

6. It is pure speculation that the discovery of the unsolved reports now at issue would have made a difference in the outcome of the 1999 trial because evidence of unsolved crimes would not have been admissible. (see *People v. Hall* (1986) 41 Cal.3d 826, 832);

///

---

[1] This Court granted the other portions of the motion on June 29, 2017.

7. The Court committed clear error in concluding that DR#9703-06865 is *Brady* material. The suspect (Mario Contreras) who was arrested by Southwest Division Officers in 1997 was made known to Vargas and the defense. Contreras' photograph was placed in Six Pack Card A (position no. 1) and shown to 77th Division victims, Teresa R. and Edith. G. who failed to identify him. (See Defendants' Exhibit Nos. **12-14**, filed on 6/5/17 and Quijano Testimony filed as Exhibit '**B**' by Plaintiff on 4/16/18, 50:15-19); Declaration of DCA Pessis (now Shepherd), filed on 12/14/17, Paragraph 11.).

8. This Court committed clear error in concluding that DR#9813-00607 is *Brady* material as that investigation included a suspect description of a male whose race was described as "B" (i.e. Black) and not a Hispanic male, such as the suspect described by the victims in the charged incidents. (See Defendants' Exhibits Nos. **10**, **11** and **19** filed on 6/5/17.);

9. The Court committed clear error in failing to consider and analyze Defendants' Exhibit No. **29**, the excerpts from Frank Rorie's deposition, filed on 12/14/17 in Defendants' Supplemental Reply brief. Rorie was aware of the arrest of the 1999 Teardrop Rapist (two months after Vargas had been convicted) and did not believe information about other teardrop suspects, including an 'identifiable' suspect would have exonerated Vargas. As such, information regarding other 'teardrop' suspects was not 'material,' according to the defense;

10. The Court failed to address the deposition testimony of Vargas and Rorie, which provides that many gang members had teardrop tattoos and therefore, evidence of other suspects' with teardrop tattoos was not exculpatory. (Defendants' Exhibits No. **36** and **37**, filed on 2/26/18.);

///

///

///

///

11. The Court committed clear error wherein it concluded that Quijano simply left the 77th Division's MAC table and transferred to the Juvenile Table. (see Quijano Declaration, Paragraph 7, filed on 6/5/17) Quijano, in fact, transferred to another LAPD Division.

For these reasons, Defendants' Motion should be granted. The meet and confer with Plaintiff's counsel took place on August 20, 2018.

Dated: August 31, 2018

**MICHAEL N. FEUER**, City Attorney
**THOMAS H. PETERS,** Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney

By: /s/ *Surekha A. Shepherd*
**SUREKHA A. SHEPHERD**, Deputy City Attorney

Attorneys for Defendants, **CITY OF LOS ANGELES**, **LOS ANGELES POLICE DEPARTMENT**, **MONICA QUIJANO**, **RICHARD TAMEZ** and **SCOTT SMITH**

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. THE COURT'S ORDER OF AUGUST 7, 2018 .......... 1

II. L.R. 7-18 PROVIDES THE BASIS FOR THIS MOTION .......... 1

III. *SMITH V. ALMADA* BARS THIS LAWSUIT .......... 2

IV. THE UNRELATED INCIDENTS AT ISSUE .......... 4

A. Incidents Identified in the August 7, 2018 Order .......... 4

B. The February 3, 1997 Incident (Southwest Division) .......... 5

C. May 17, 1998 Incident (DR#9813-00607-Newton Division) .......... 6

D. June 30, 1997 Incident .......... 6

E. The July 14, 1998 Rampart Incident .......... 6

V. THE ATTACKER SERIES IS IRRELEVANT .......... 7

A. Shonte S (June 22, 1998 Incident) .......... 7

VI. TEADROP TATTOOS WERE VERY COMMON IN THE 1990's .......... 8

VII. THE DEFENSE KNEW OF THE 1999 TEARDROP RAPIST IN LA .......... 8

VIII. QUIJANO LEFT 77th DIVISION IN SEPTEMBER OF 1998 .......... 8

IX. DANIA AND DEBORAH INCIDENT .......... 9

X. CONCLUSION .......... 9

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Izazaga v. Superior Court* (1991) 54 Cal.3d 356 .......... 4

*Kisela v. Hughes*, 2018 U.S. LEXIS 2245 (U.S. 4/2/18) .......... 3

*People v. Hall* (1986) 41 Cal.3d 826 .......... 1, 4

*People v. Kaurish* (1990) 52 Cal.3d 648 .......... 4

*People v. Littleton* (1992) 7 Cal. App.4th 906 .......... 1, 4

*Smith v. Almada*, 640 F.3d 931(9th Cir. 2011) .......... 1, 2, 6, 7, 9

*Somner v. U.S.*, 2011 WL 4592788 (S.D. CA 2011) .......... 5

*U.S. v. Griggs*, 713 F.2d 672 (11th Cir. 1983) .......... 5

*United States v. Dupuy*, 760 F.2d 1492 (9th Cir. 1985) .......... 5

*White v. Pauly*, 580 U. S. ___, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) (per curiam) .......... 3

**Statutes**

42 U.S.C. Section1983 .......... 2

California Evidence Code Section 352 .......... 4

California Evidence Code Section 1040 .......... 4

Proposition 115-the Crime Victims Justice Reform Act (1990) .......... 4

**Other Authorities**

California Constitution, Article I, Section 1 .............................................................. 4

L.R. 7-18 ................................................................................................................. 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. THE COURT'S ORDER OF AUGUST 7, 2018

This Court issued an order on August 7, 2018, wherein it improperly denied the remainder of Defendant Quijano and Smith's motion for partial summary judgment. The Court's denial of the motion was 'clear error' and Defendants will suffer manifest injustice if required to proceed to trial. (See Minute Order dated 6/29/17, Pacer document no. 62, wherein the Court granted the MSJ, in part.)

At the time of Vargas' 1999 criminal trial, it was not clearly established that evidence of unsolved, so-called similar crimes was discoverable pursuant to *Brady* or any California statute or even admissible at a criminal trial. (see *Smith v. Almada*, 640 F.3d 931(9th Cir. 2011); *People v. Littleton* (1992) 7 Cal. App.4th 906, 911; *People v. Hall* (1986) 41 Cal.3d 826, 832)) Even if Plaintiff could have obtained an order for an in camera review of the unsolved, sexual assault investigations at issue, it is pure speculation that the Superior Court would have disclosed any such information due to the fact that there was no evidence of an identifiable suspect who had been arrested or charged in connection with the other incidents, with one exception. (See Section II-B, herein; *People v. Hall* (1986)) 41 Cal.3d 826, 832)) For the additional reasons stated herein, the Court should have granted the remainder of the Motion for Partial Summary Judgment.

### II. L.R. 7-18 PROVIDES THE BASIS FOR THIS MOTION

Reconsideration is appropriate if: (1) the party seeking reconsideration presents the court with newly-discovered evidence; (2) the court committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. (*Sch. Dist. No. 1J, Multnomah County, Or. v. AC&S*, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993))

Here, it was not clearly established pursuant to California law during the relevant time period that the unsolved, so-called similar crimes constituted *Brady* material and were therefore 'automatically' discoverable by the defense or admissible in a criminal

case. Further, this Court committed clear error in failing to conduct the required particularized qualified immunity analysis based on the specific facts of this case and in light of *Smith v. Almada*, 640 F.3d 931(9th Cir. 2011). This Court cannot simply rely on *Brady*, as *Smith* provides the basis for qualified immunity for the Defendant Officers. For the additional reasons stated herein, the Court should grant this Motion.

## III. *SMITH V. ALMADA* BARS THIS LAWSUIT

In light of *Smith v. Almada*, 640 F.3d 931(9th Cir. 2011), Plaintiff cannot demonstrate that any of the unsolved and unrelated incidents at issue were ‘material’ in the context of *Brady*. This Court has not addressed the unquestionable relevance of this opinion. In *Smith*, the Plaintiff was arrested by Detective Alameda for arson. The criminal case was tried twice. Both trials resulted in mistrial because the jurors were unable to reach a unanimous verdict. During one of the trials, Smith's criminal defense attorney attempted to introduce evidence of an uncharged arson in an effort to demonstrate that someone else committed the charged offense. The prosecution objected and moved to exclude the evidence and the Court sustained the objection.

Following the dismissal of the criminal case, Plaintiff Smith filed a lawsuit pursuant to 42 U.S.C. Section 1983, wherein he alleged several claims, including the failure of Detective Almada to disclose several other, unrelated arson crimes within the City of Santa Monica which he contended were ‘exculpatory.’ The Defendants’ motion for summary judgement was granted by then-United States District Court Judge A. Howard Matz. Plaintiff appealed to the Ninth Circuit, which affirmed the judgment from the trial court. In concluding the *Brady* claim failed, the *Smith* Court reasoned that based on California law the unrelated crimes which were not disclosed probably would not have been admissible. (*Id.* at 940) As such, Plaintiff Smith could not demonstrate 'materiality.' In other words, he could not show that had he been made aware of these other arson crimes 'that it would have made a difference in the outcome of the case.'

Here, Plaintiff Vargas cannot demonstrate ‘materiality’ for the same reasons. In the alternative, Defendants are entitled to qualified immunity. The unsolved investigations

identified in this Court's minute order of August 7, 2018, were not 'automatically' discoverable and would not have been admissible at Vargas' 1999 criminal trial in light of the California authorities cited herein and in *Smith*. As such, Plaintiff cannot show 'materiality.' Plaintiff has had sufficient time to demonstrate that qualified immunity does not apply, but has failed to do so. It is Defendants' contention that the August 7, 2018, order fails to include a proper qualified immunity analysis. In *Kisela v. Hughes*, (2018) 584 U.S. ___, the Court concluded the officer who shot the plaintiff was entitled to qualified immunity. In reaching its decision it reasoned:

> The high court explained that "'[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *White v. Pauly*, 580 U. S. ___, ___, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) (per curiam) (alterations and internal quotation marks omitted)." For a right to be "clearly established," existing precedent must have placed the constitutional or statutory right **beyond debate**. Unless existing precedent "squarely governs" the specific facts at issue in an excessive force case, police officers are entitled to qualified immunity.[1] The Court added that it had repeatedly told courts, "the Ninth Circuit in particular," not to define clearly established law at a high level of generality.[2] Citing *Plumhoff v. Rickard*,[3] the Court observed that "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that **any reasonable** official in the defendant's shoes would have understood that he was violating it.'" (emphasis added)

Accordingly, the high court found that the Ninth Circuit did not implement this portion of the standard correctly in denying qualified immunity in Kisela. Here, the so-called right for the defense to discover the unsolved crimes at issue and admit one or more of those crimes into evidence at Vargas' 1999 trial was not 'clearly established' and would have required a complicated analysis by the Superior Court

judge.2 As such, Plaintiff cannot and has not demonstrated that the rights he claims were violated were 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it,' or that the issue was 'beyond debate.' For these reasons, Plaintiff cannot maintain this lawsuit any longer and the Defendants are entitled to judgment as a matter of law.

As such, it was manifestly unjust for this Court to deny qualified immunity because it was not clearly established that the unsolved investigations at issue constituted *Brady* material, especially since most of the crimes occurred before Vargas was arrested. As such, a reasonable officer would have concluded that Vargas may have committed those earlier offenses as well. This is especially true considering Vargas' 1992 rape conviction. Since the law was not clearly established as to the discoverability of the information at issue between 1998-2000, Defendants are entitled to qualified immunity.

## IV. THE UNRELATED INCIDENTS AT ISSUE

### A. Incidents Identified in the August 7, 2018 Order

In its order dated August 7, 2018, this Court improperly concluded that certain unsolved, unrelated sexual assaults constituted *Brady* material at the time Vargas was being prosecuted by the District Attorney's Office.

The unrelated incidents occurred on the following dates:

1. July 29, 1996 (77th Division);
2. September 11, 1996 (77th Division);
3. February 3, 1997 (Southwest Division)
4. June 30, 1997 (Rampart Division)
5. July 2, 1997 (Newton Division);
6. May 17, 1998 ( DR#9813-00607, Newton Division);

---

[2] The other authorities which preclude this lawsuit are the Official Information Privilege, as well as then-existing legal precedent and California Evidence Code Section 352; Proposition 115-the Crime Victims Justice Reform Act (1990); California Constitution, Article I, Section 1; California Evidence Code Section 1040; *People v. Hall* (1986) 41 Cal.3d 826, 832; *People v. Littleton* (1992) 7 Cal.App.4th 906; (rejecting discovery of unsolved crimes, wherein there was neither a charged or arrested suspect for those incidents); *People v. Kaurish* (1990) 52 Cal.3d 648, 686; *Izazaga v. Superior Court (*1991) 54 Cal.3d 356, 363)(concluding that proper application of Proposition 115 complied with both the state and federal Constitutions))

7. February 5, 1998 (77th Division);
8. June 22, 1998 (77th Division);
9. July 14, 1998 (Rampart Division);
10. February 13, 1999 (77th Division);
11. May 15, 1999 (77th Division)

Here, it is undisputed Plaintiff has failed to identify any evidence which provides that one or more suspects had been charged and convicted in connection with the above-referenced incidents as of the time of his 1999 trial. Further, he has failed to provide any evidence whatsoever that during his 1999 trial, an identifiable suspect could be 'linked' to any of the offenses for which he was charged. For the reasons stated below, the February 3, 1997 incident from Southwest Division is moot.

**B. The February 3, 1997 Incident (Southwest Division)**

It is undisputed that information regarding the identifiable suspect from this incident was disclosed in the underlying criminal case. (See Defendants' Exhibits **12-14**, filed on 6/5/17) It is undisputed that only the investigation conducted by LAPD's Southwest Division detectives in relation to the February 3, 1997 incident resulted in the arrest of a suspect (i.e. Mario Contreras). Suspect Contreras (not to be confused with non-party retired LAPD Detective Al Contreras) was arrested during May of 1997 and charges were later filed against him. However, the subsequently filed criminal case was eventually dismissed. More importantly, it is undisputed that Quijano included Contreras' photograph in Six-Pack Card "**A**" (position no. 1) which was shown to victims Edith G. and Teresa R. on July 16, 1998. Vargas' photograph was placed in position no. 6. Both women selected Vargas' photograph; therefore, excluding Contreras as a suspect in their incidents. (See Defendants' DSUF Nos. 11-13; MSJ Exhibits **12, 13** and **14**, filed on 6/5/17)) To the extent the defense failed to cross-examine Quijano about Mr. Contreras cannot serve as the basis of a *Brady* claim. (See *United States v. Dupuy*, 760 F.2d 1492, 1502 n. 5 (9th Cir. 1985); *U.S. v. Griggs*, 713 F.2d 672, 674 (11th Cir. 1983); *Somner v. U.S.*, 2011 WL 4592788 at *7 (S.D. CA 2011))

Further, Plaintiff has attached the Quijano Deposition Transcript as an exhibit to his brief filed on April 16, 2018. Quijano testified therein that she included Contreras' photograph in a six-pack. (See also **Quijano Transcript, 50:15-19** filed as Plaintiff's Exhibit "**B**" on 4/16/18 and Pessis Declaration, Paragraph 11, filed on 12/14/17.) As such, the *Brady* claim is moot as to the February 3, 1997 incident.

**C. May 17, 1998 Incident (DR#9813-00607-Newton Division)**

This incident occurred on May 17, 1998 and is mentioned in the Court's August 7, 2018 order. Defendants maintain that that Court committed clear error in concluding it constitutes *Brady* material. All of the charged crimes involved a description by the victims of a lone, male Hispanic having attacked them with a knife. (Defendants' Exhibits **10**, **11** and **19**, filed on 6/5/17) Likewise, the charged offenses involved instances of a 'stranger,' wherein the victims did not know their attacker. However, the 1998 Newton incident includes a suspect description which refers to a male who is not Hispanic, but rather "Black," and who was known to the victim. The corresponding investigative report will be provided to the Court for an in camera review. (Shepherd Declaration, Paragraph 12) In light of *Smith v. Almada*, 640 F.3d 931(9th Cir. 2011), the Court should have disregarded this particular investigation and/or granted qualified immunity to the Defendant Officers.

**D. June 30, 1997 Incident**

For the same reasons, the investigation into the June 30, 1997 incident is irrelevant, especially since it involved multiple suspects. (See Shepherd declaration, paragraph 13) The charged offenses involved a lone, male Hispanic suspect. (See Defendants' Exhibit Nos. **10**, **11**, and **19** filed on 6/5/17)

**E. The July 14, 1998 Rampart Incident**

This Court has concluded there is no evidence to support the *Brady* claim as to this report. (See August 7, 2018 order footnote 13)

///

///

## V. THE ATTACKER SERIES IS IRRELEVANT

Contrary to *Smith*, Plaintiff wrongfully insists unsolved crimes are relevant. In light of *Smith*, the Attacker series has no relevance in this case and Defendants are informed a suspect has not been arrested. As such, this Court committed clear error in attributing information discovered from the Attacker Series investigation and using it against the Defendant Officers in reaching its conclusion that the unsolved sexual assaults at issue are *Brady* material. The Attacker Series was identified years after Vargas' conviction and did not involve the efforts or input of the Defendant Officers. The investigation was aided by DNA technology which did not exist in 1998, 1999 or 2000. The 'Attacker Series' was named as such by other LAPD Detectives who are assigned to the Robbery Homicide Division ("RHD."). The lead investigator, LAPD Detective III Sharlene Johnson, does not believe that one suspect is responsible for all of the thirty-nine (39) offenses included in the series. (see Exhibit Johnson Depo. Excerpts Exhibit **39**, filed on 2/26/18) As such, this Court appears to have been misled by Plaintiff as to the so-called relevance of the pending investigation.

The successive pleadings filed by Plaintiff wherein he references the Attacker Series have simply created incredible confusion in these proceedings. For example, the Attacker Series investigation has identified a m.o which includes both knife, and a gun. None of the charged victims (Karen P. Edith G. or Teresa R., Defendants Exhibits **10**, **11** and **19**) were attacked by a suspect using a gun. In overlooking the undisputed facts surrounding the charged victims known to the Defendant Officers and the fact that the Attacker Series investigation began **after** Vargas' conviction, this Court improperly expanded the scope of relevant evidence. The charged offenses involved only a lone, male Hispanic suspect armed with a knife. (See Defendants' Exhibits **10**, **11** and **19**)

### A. Shonte S (June 22, 1998 Incident)

Since Shonte is not a female Hispanic and never described facts similar to the charged victims, her incident is also irrelevant. (Defendant's Exh. **6**, **10**, **11** and **19**, filed 6/5/17) Defendants are unaware of any identifiable suspect from the Attacker series.

**VI. TEADROP TATTOOS WERE VERY COMMON IN THE 1990's**

This Court's order of August 7, 2018 overlooks the undisputed testimony of Vargas and his counsel, Rorie, wherein they admitted that teardrop tattoo were common during the relevant time period. (Exhibit **29** filed on 12/14/17 and Exhibit **37** filed on 2/26/18). These undisputed facts call into question why the Court would consider teardrop suspects as a group to be *Brady* material. The evidence in the record does not support any such conclusion.

**VII. THE DEFENSE KNEW OF THE 1999 TEARDROP RAPIST IN LA**

It is undisputed that Vargas fired his deputy public defender in early 1999. Frank Rorie was then appointed to represent Vargas in the criminal case. During his deposition, Rorie admitted that he assumed the LAPD was investigating other teardrop suspects. (Defendants' Exhibit **29,** Rorie Deposition, filed on 12/14/17 and Exhibit **37**, filed on 2/26/18.) This exhibit was not addressed by the Court in its August 7, 2018 order.

Further, Rorie did not believe that evidence of other 'teardrop' suspects would have exonerated Vargas, including the 1999 Teardrop Rapist whose arrest was made known to the public, Rorie and presumably Vargas. (See Defendants' Exhibits **29** and **37**, filed on 12/14/17 and 2/26/18) These points are relevant to clarify the record and refute any claim of 'materiality' as to unsolved Crimes which fails to exist in light of *Smith*.

**VIII. QUIJANO LEFT 77th DIVISION IN SEPTEMBER OF 1998**

Quijano's Declaration was filed on June 5, 2017, wherein she stated at Paragraph 7 that she left 77th Division on or about September 28, 1998. Quijano then began working several miles away at LAPD's Juvenile Division which was located in the downtown Los Angeles area. Since Quijano left 77th Division altogether, this Court has erred in concluding she simply left the "MAC table" and went to another table at the same Division.

///

///

///

## IX. THE DANIA AND DEBORAH INCIDENTS

It is undisputed that the prosecution and defense knew of Dania and Deborah, whose incidents were similar to the charged offenses. However, those victims did not identify Vargas. Further, the defense never attempted to introduce evidence of these incidents at the 1999 trial. Again, defendants contend this type of evidence was not admissible, but note that the *Brady* claim is purely speculative as Plaintiff fails to demonstrate that information regarding unsolved crimes was considered 'exculpatory' by his own counsel.

## X. CONCLUSION

Based on the foregoing, the remainder of the motion for summary judgment should have been granted and judgment should be entered for all Defendants. In light of *Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011), it is manifestly unjust for this litigation to continue.

Dated: August 31, 2018

**MICHAEL N. FEUER**, City Attorney
**THOMAS H. PETERS,** Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney

By: /s/ *Surekha A. Shepherd*
**SUREKHA A. SHEPHERD**, Deputy City Attorney

Attorneys for Defendants, **CITY OF LOS ANGELES**, **LOS ANGELES POLICE DEPARTMENT**, **MONICA QUIJANO**, **RICHARD TAMEZ** and **SCOTT SMITH**