**MICHAEL N. FEUER,** City Attorney - SBN 111529
**THOMAS H. PETERS,** Chief Assistant City Attorney – SBN 163388
**CORY M. BRENTE,** Assistant City Attorney – SBN 115453
**SUREKHA A. SHEPHERD,** Deputy City Attorney – SBN 193206
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-7036
Fax No.:   (213) 978-8785
Email: Surekha.Shepherd@lacity.org

Attorneys for Defendants, **CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, MONICA QUIJANO, RICHARD TAMEZ** and **SCOTT SMITH**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LORENZO VARGAS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; COUNTY OF LOS ANGELES; OFFICE OF THE LOS ANGELES DISTRICT ATTORNEY; LOS AGELES SHERIFF'S DEPARTMENT; MONICA QUIJANO; RICHARD TAMEZ; and DOES 1-10 INCLUSIVE,<br><br>Defendants. | **CASE NO. CV16-08684 SVW (AFMx)**<br>*Hon. Stephen V. Wilson, Ctrm. 10A*<br>*Mag. Alexander F. MacKinnon, Ctrm. H, 9th Fl.*<br><br>**DEFENDANTS MONICA QUIJANO AND SCOTT SMITH'S REPLY IN SUPPORT OF THIER MOTION FOR RECONSIDERATION (L.R. 7-18)**<br><br>[Filed concurrently with the Declaration of Surekha A. Shepherd]<br><br>**DATE:** October 1, 2018<br>**TIME:** 1:30 p.m.<br>**CTRM:** 10A |

**TO THIS HONORABLE COURT, PLAINTIFF AND HIS COUNSEL:**

Defendants MONICA QUIJANO and SCOTT SMITH hereby respectfully submit the following reply in support of their Motion for Reconsideration.

Dated: September 13, 2018

**MICHAEL N. FEUER**, City Attorney
**THOMAS H. PETERS,** Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney

By: /s/ *Surekha A. Shepherd*
**SUREKHA A. SHEPHERD**, Deputy City Attorney

Attorneys for Defendants, **CITY OF LOS ANGELES**, **LOS ANGELES POLICE DEPARTMENT**, **MONICA QUIJANO**, **RICHARD TAMEZ** and **SCOTT SMITH**

# TABLE OF CONTENTS

I. DEFENDANTS' MOTION SHOULD BE GRANTED ................................... 1

II. PLAINTIFF'S OPPOSITION IS UNAVAILING ............................................. 4

    A. The *Mellen* Case Did Not Involve Unsolved Crimes ............................. 4

    B. The *Carrillo* Case is Distinguishable .................................................... 5

III. THE INFORMATION AT ISSUE WAS PRIVILEGED ................................. 5

    A. The Information at Issue was Not Discoverable ..................................... 5

    B. The Teardrop Tattoos are Not Relevant .................................................. 6

IV. PLAINTIFF HAS NO EVIDENCE OF AN IDENTIFIABLE SUSPECT ................................................................................................................. 6

    A. The Unsolved Crimes at Issue are Not Material ..................................... 6

    B. The Required Factual Inquiry for 'Materiality' ...................................... 7

    C. The Unrelated Incidents ........................................................................... 7

        1. July 29, 1996 and September 11, 1996 Incidents ............................ 7

        2. February 3, 1997 Incident ................................................................. 7

        3. June 30, 1997 and July 2, 1997 Incidents ........................................ 8

        4. February 5, 1998 and May 17, 1998 Incidents ................................ 8

        5. June 22, 1998 Incident ....................................................................... 8

        6. July 24, 1998 Incident ....................................................................... 8

        7. February 13, 1999 and May 15, 1999 ............................................... 9

V. QUALIFIED IMMUNITY APPLIES ............................................................... 9

    A. The Analysis Must Focus on the 'Conduct' ........................................... 9

    B. Sources of "Clearly Established Law" .................................................. 10

    C. Qualified Immunity and the *Beaman* Opinion ..................................... 11

VI. CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. al-Kidd*,
   563 U.S.731 (2011) .................................................................................. 3

*Beaman v. Freesmeyer*,
   2015 U.S. App. Lexis 527 (7th Cir. 2015) ............................................. 3, 4, 11, 12

*Brosseau v. Haugen*,
   543 U.S. 194 (2004) .................................................................................. 3

*Carrillo v. County of Los Angeles*,
   798 F.3d 1210 (9th Cir. 2015) .................................................................. 5

*Coleman v. Calderon*,
   150 F.3d 1105 (9th Cir. 1998) .............................................................. 3, 11

*Estate of Escobedo v. Martin*,
   702 F.3d 388 (7th Cir.2012) ................................................................... 11

*Hope v. Pelzer*,
   536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ........................ 11

*Hunter v. Bryant*,
   502 U.S. 224 (1991) .................................................................................. 3

*Izazaga v. Superior Court*
   *(*1991) 54 Cal.3d 356 ............................................................................... 5

*Kisela v. Hughes*,
   548 U.S. __ (2018) ............................................................................. 10, 12

*Paradis v. Arave*,
   240 F.3d 1169 (9th Cir. 2001) ............................................................... 3, 9

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ................................................................................ 10

*People v. Hall*
   (1986) 41 Cal.3d 826 ................................................................ 1, 5, 6, 10

*People v. Kaurish*
(1990) 52 Cal.3d 648 .................................................................................................. 5

*People v. Littleton*
(1992) 7 Cal.App.4th 906 .............................................................................. 5, 6, 10

*Pickford v. Janda*,
660 Fed.Appx. 494 (9th Cir. 2016) ....................................................................... 3, 9

*Saucier v. Katz*,
533 U.S. 294 (2001) .................................................................................................. 10

*Smith v. Almada*,
640 F.3d 931 (9th Cir. 2011) ............................................................................*passim*

*Smith v. City of Chicago*,
242 F.3d 737 (7th Cir.2001) ..................................................................................... 11

*Steidl v. Fermon*,
494 F.3d 623 (7th Cir.2007) ..................................................................................... 12

*U.S. v. Jernigan*,
492 F.3d 1050 (9th Cir. 2007) .................................................................................... 1

*U.S. v. Morales*,
746 F.3d 310 (7th Cir.2014) ..................................................................................... 13

*White v. Pauley*,
137 S.Ct. 548 (2017) ........................................................................................... 10, 12

*Wilson v. Layne*,
562 U.S. 603 (1999) ............................................................................................. 4, 13

*Wood v. Bartholomew*,
516 U.S. 1 (1995) ................................................................................................... 3, 9

**Statutes**

California Evidence Code Section 352 ......................................................................... 5

California Evidence Code Section 1040 ....................................................................... 5

Proposition 115-the Crime Victims Justice Reform Act (1990) ................................. 5

**Other Authorities**

*Brady* ............................................................................................................... *passim*

California Constitution, Article I, Section 1 ................................................................ 5

California Evidence Code ........................................................................................... 1

Fourteenth Amendment ............................................................................................... 9

L.R. 56-2 ..................................................................................................................... 2

## I. DEFENDANTS' MOTION SHOULD BE GRANTED

Plaintiff's *Brady* claim is barred by *Smith v. Almada*, 640 F.3d 931, 940 (9th Cir. 2011) wherein the Ninth Circuit rejected the same type of *Brady* claim as that posited by Vargas. Information regarding unsolved, unrelated sexual assault incidents listed in the August 7, 2018 is not 'material' for purposes of *Brady* because it is not admissible in a California state court. (See Defendants' Motion for Reconsideration, Section III and footnote 2 at page 4.)

Absent from Plaintiff's several briefs is the citation to a single case which demonstrates that the information at issue (i.e. chronological record, unrelated crime reports or evidence that other sexual assault had occurred before and after Vargas' arrest) was discoverable or even admissible. Defendants are not aware of any such authority. It is undisputed that the California Evidence Code governed whether any piece of evidence was admissible at Vargas' 1999 trial and not the Federal Rules of Evidence. Plaintiff cannot demonstrate that the information at issue (including that which related to one male, Black suspect in the May 17, 1998 incident and the 25-30 suspects referenced in the crime report for the February 5, 1998 incident) would have been admissible at his 1999 trial, or even discoverable prior to the trial.

The Ninth Circuit's opinion in *U.S. v. Jernigan*, 492 F.3d 1050 (9th Cir. 2007) is inapposite as it did not address whether unsolved crime reports were admissible under California law in 1999, whereas *Smith* did address this issue. *Smith* (which cites to *Hall*, a 1986 opinion), provides the very basis for this Court to reconsider its prior erroneous conclusion that unsolved incidents were material.

Vargas has failed to demonstrate that had he known of the ten, unrelated incidents at issue before or during the time of his 1999 trial, that he could have accomplished the following: 1) identified any suspect from those unrelated incidents and 2) linked a **suspect** from any of those incidents to **all of** the **three charged offenses**.

///

      The Court previously asked the parties to address 'materiality' in its June 29, 2017 minute order, but Plaintiff failed to meet his burden pursuant to L.R. 56-2 and California law.  Plaintiff still cannot meet this burden.  With regard to the ten, unrelated incidents at issue, it is undisputed that **only one 'identifiable'** suspect was known to the Defendant Officers and he was disclosed. (See Proposed Court Exhibit No. 6 and Defendants' MSJ Exhibit Nos. 12-13.)  <u>Here, Plaintiff fails to demonstrate that anyone was arrested or charged in relation to the nine, remaining unrelated incidents as of the time of his 1999 trial</u>.

      Since it is undisputed that teardrop tattoos were very common in the 1990s and no one was charged or arrested in relation to the nine, remaining unrelated incidents, Plaintiff's *Brady* claim fails. (Defendants' Exhibit Nos. 29, 36 and 37.)  <u>It is undisputed that Vargas fails to demonstrate there was any physical or other evidence linking the ten, unrelated incidents to the three charged offenses at the time of the 1999 trial</u>.  Vargas criticizes the police and prosecution for failing to identify DNA evidence which linked him to the three charged offenses in the late 1990s.  However, DNA was not required for the prosecution to file charges against Vargas.  Whether that standard has now changed, cannot serve as the basis of the *Brady* claim.  And whether other officers believe the occurrence of unrelated crimes to be a 'series' now, is wholly irrelevant to this case which deals with events from twenty years ago. (i.e. the irrelevant Attacker Series.)

      <u>Clearly, Plaintiff cannot proffer any evidence of 'materiality' and therefore, there is no reason to litigate the factual disputes which this Court believes exist as to the disclosure of the Serial Rape Book or 'subjective knowledge' of the incidents which are not identified in the chronological record</u>.

      More importantly, qualified immunity applies in this action and the Court's prior analysis has been rejected by the United States Supreme Court.  This court need not address Prong 1 and then Prong 2, but may simply determine whether the right at issue was clearly established.  <u>Absent from the record is any case which required the</u>

2

<u>Defendant Officers to affirmatively produce their chronological record, crime reports for the incidents referenced therein or any other information related to ongoing criminal investigations</u>.

The resolution of the qualified immunity issue does not require a determination of whether the right to discovery of 'exculpatory' evidence existed in the late 1990s. Rather, the issue is whether there was a clearly established right on the part of Vargas to discover information concerning ongoing criminal investigations which was **privileged** and also **inadmissible** pursuant to California law. Plaintiff has failed to demonstrate that the right at issue was clearly established. <u>Relying on *Brady* itself and inapposite cases within the Ninth Circuit is insufficient and constitutes clear error/manifest injustice</u>. (*Ashcroft v. al-Kidd*, 563 U.S.731, 741 (2011)(rejecting the definition by courts of 'clearly established' at a high level of generality))

Qualified immunity has been applied by the United States Supreme Court, wherein it concluded the information from a polygraph examination alleged to be *Brady* material was 'inadmissible.' (See *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995)(reversing the Ninth Circuit's opinion that inadmissible evidence was *Brady* material.); see also *Beaman v. Freesmeyer*, 2015 U.S. App. Lexis 527, *1 (7th Cir. 2015).) Since qualified immunity is an immunity from suit and the right at issue was not clearly established, the Court's denial of the remainder of the summary judgment motion was both 'clear error' and 'manifest injustice.' (*Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Ashcroff v. al-Kidd*, 563 U.S. 731, 741 (2011).) "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." (*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).)

Even if Plaintiff could identify a case which provides that the evidence at issue 'might have been admissible,' the Ninth Circuit and other federal circuit courts are in conflict on this issue. (*Coleman v. Calderon*, 150 F.3d 1105 (9th Cir. 1998); *Pickford v. Janda,* 660 Fed.Appx. 494 (9th Cir. 2016); *Paradis v. Arave,* 240 F.3d 1169 (9th Cir.

2001); *Beaman v. Freesmeyer*, 2015 U.S. App. LEXIS 527, *1 (7th Circuit 2015).) As such, the law was not 'clearly established.' Since Plaintiff cannot refute the existing conflict between various Ninth Circuit panels and other federal circuits, this Court must grant the Motion because qualified immunity applies. (*Wilson v. Layne*, 562 U.S. 603 (1999))

## II. PLAINTIFF'S OPPOSITION IS UNAVAILING

In the Opposition, Plaintiff fails to refute the obvious application of *Smith* to this case. Vargas also fails to meet his burden as to qualified immunity. Instead of meeting his burden in the Opposition, Plaintiff makes the following unavailing contentions: 1) the Court has considered the relevant evidence; 2) that Defendants have failed to identify new law or facts and 3) the right to discover *Brady* material has been affirmed in a recent Ninth Circuit opinion. Plaintiff's Opposition conveniently fails to address the Defendants' compelling arguments regarding 'clear error' and 'manifest injustice' (i.e. the Court's failure to address *Smith* and apply qualified immunity.). For the additional reasons stated herein, the Court should grant the Motion for Reconsideration.

### A. The *Mellen* Case Did Not Involve Unsolved Crimes

Contrary to Plaintiff's unavailing opposition, the Ninth Circuit's recent opinion in *Susan Mellen v. Winn*, et al., 2018 WL 3945557 (9th Cir. 2018) has no bearing on this case. Defendants' counsel in this case was also one of the defense attorneys in the *Mellen* matter. (Shepherd Declaration, Paragraph 2.) The City Attorney's Office represented the City and retired LAPD Detective Richard Hoffman. Both of these Defendants were dismissed from the case. The facts in *Mellen* bear absolutely no resemblance to the facts in the case at bar. A very distinct *Brady* claim was litigated in *Mellen,* wherein the plaintiff was arrested in connection with a brutal murder. The arrest was made pursuant to a warrant. The evidence at issue in *Mellen* is distinct from this case and therefore, Plaintiff's reliance on the Ninth Circuit's opinion is unavailing.

///

////

### B. The *Carrillo* Case is Distinguishable

Any reliance by Vargas on the Ninth Circuit's opinion in *Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1218 (9th Cir. 2015), is equally unavailing. In *Carrillo*, the Ninth Circuit concluded qualified immunity did not apply in relation to a *Brady* claim which was distinct from the one in this action. The law enforcement officers therein were faced with different allegations of constitutional misconduct. For example, there was an allegation of misconduct during an identification procedure which was allegedly not disclosed to the prosecution. Further, there was an allegation that officers or detectives failed to disclose information about the victim's ex-wife having attempted to run him over with a vehicle prior to his death (i.e. an identifiable suspect, no such facts are present in this case).

## III. THE INFORMATION AT ISSUE WAS PRIVILEGED

### A. The Information at Issue was Not Discoverable

California law protects against the dissemination of the very information Plaintiff claims he had an 'automatic' right to discover, i.e. unsolved sexual assault offenses. It is undisputed that ongoing investigation are subject to the protection afforded by the Official Information Privilege. (California Evidence Code Section 1040). Moreover, the right to privacy applies to crime victims pursuant to the California Constitution, Article I, Section 1. Importantly, when no one has been arrested or charged with another criminal offense, information contained in police reports have "no value to the defendant unless he was able to solve the other crimes and identify the perpetrator."(See *People v. Littleton* (1992) 7 Cal.App.4th 906, 911.)[1]

///

///

---

[1] The other authorities which preclude this lawsuit are the Official Information Privilege, as well as then-existing legal precedent and California Evidence Code Section 352; Proposition 115-the Crime Victims Justice Reform Act (1990); California Constitution, Article I, Section 1; California Evidence Code Section 1040; *People v. Hall* (1986) 41 Cal.3d 826, 832; *People v. Littleton* (1992) 7 Cal.App.4th 906; (rejecting discovery of unsolved crimes, wherein there was neither a charged or arrested suspect for those incidents); *People v. Kaurish* (1990) 52 Cal.3d 648, 686; *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 363)(concluding that proper application of Proposition 115 complied with both the state and federal Constitutions))

5

### B. The Teardrop Tattoos are Not Relevant

In the underlying criminal action, the legal issues were the following: 1) whether the prosecution could prove beyond a reasonable doubt that Vargas attached victim Karen P. on February 3, 1998; 2) whether the prosecution could prove beyond a reasonable doubt that Vargas attacked victim Edith G. on May 30, 1998; and 3) whether the prosecution could prove beyond a reasonable doubt that Vargas forcibly raped victim Teresa R.

The prosecution never argued that Vargas was the only Hispanic male resident of Los Angeles County to have a teardrop tattoo and committed sexual assaults, as alleged in the Information. The prosecution never argued that a so-called crime spree of sexual assaults committed by a lone, male Hispanic with a teardrop tattoo that suddenly ceased after his arrest on July 21, 1998. Further, the prosecution did not refer to Vargas as "The Teardrop Rapist" during his 1999 trial. Plaintiff cannot prove one teardrop rapist was committing crimes in the 1990s, as he erroneously claims. Plaintiff's own criminal trial counsel, Rorie, did not believe that evidence of unidentifiable 'other teardrop suspects' or even an identifiable suspect whose arrest was made known by media would have exonerated Vargas. As such, the 'teardrop' theory of materiality finds no support in the record or the law. The materiality analysis does not turn on whether one or more men with teardrop tattoos were terrorizing women in Los Angeles during the late 1990s. Rather the analysis must incorporate the admissibility standard for third-party evidence set forth in *Littleton* and *Hall*, which Plaintiff cannot satisfy. Plaintiff seems to forget that victim Teresa was confronted with the fact that she initially claimed the attacker had two teardrop tattoos, but identified Vargas who had only a single, teardrop tattoo and testified the tattoos were probably fake. (DSUF Nos. 134-136 and 170.)

### IV.  PLAINTIFF HAS NO EVIDENCE OF AN IDENTIFIABLE SUSPECT

#### A. The Unsolved Crimes at Issue are Not Material

Unsolved crimes evidence is not discoverable and cannot otherwise form the basis of a *Brady* claim in this case. (See *Smith* which cited *People v. Hall,* a 1986 opinion.)

The arsons at issue in *Smith* were unsolved as are the unrelated sexual assaults at issue in this action. The materiality determination in *Smith* did not turn on whether 'other arson' crimes had been committed or whether there was physical evidence linking Smith to the charged offense. Rather, the materiality determination turned on whether the other crimes could be linked to an identifiable suspect who could also be linked to the charged arson offense. *Smith* had no such evidence and Vargas' *Brady* claim suffers from the same incurable defect.

### B. The Required Factual Inquiry for 'Materiality'

Accordingly, the relevant factual inquiry for this Honorable Court is not whether other sexual assault involving suspects with teardrops have occurred, but rather the following:

*1) whether anyone had been arrested for the unrelated incidents identified by this Court in its August 7, 2018 minute order at pages 8-9 as of the time of Vargas' 1999 criminal trial and,*

*2) if a third-party had been arrested for one of those incidents, was there evidence in 1999 linking that person to the charged offenses involving Karen P. Edith G. and Teresa R."*

Pursuant to *Smith*, this Court's 'materiality' analysis must address the preliminary question of whether a suspect had been arrested or charged in connection with the unrelated incidents as of the time that Vargas' 1999 trial? Plaintiff has no such evidence as Contreras was eliminated as a suspect in the 77th Division incident.

### C. The Unrelated Incidents

### 1. July 29, 1996 and September 11, 1996 Incidents

Plaintiff has failed to proffer any evidence that a suspect has been charged or arrested with these offenses. There is also no evidence before this Court which provides that these incidents are related to one another.

### 2. February 3, 1997 Incident

This is the only incident wherein an 'identifiable' suspect was made known to

7

Quijano and Smith. The suspect is Mario Garcia Contreras, who was arrested during May of 1997. He was eliminated as a suspect from both the Edith G. and Teresa R. incidents as a result of the July 16, 1999 identification procedure. (Defendants' MSJ Exhibits 12-13 and Proposed Court Exhibit No. 6.)

### 3. June 30, 1997 and July 2, 1997 Incidents

Plaintiff fails to proffer any evidence that the same suspect committed these crimes and that anyone has been arrested or charged in connection with these incidents.

### 4. February 5, 1998 and May 17, 1998 Incidents

Plaintiff fails to proffer any evidence that the same suspect committed both of these incidents and that anyone has been arrested or charged in connection with these incidents. The February 5, 1998 incident involved 25,030 suspects, according to page 3 the related crime report. This report may not have been provided to the Court by the parties.

Once again, as demonstrated by proposed Court Exhibit No. 7, the suspect is a male Black and not a male Latino as in the charged offenses. (Defendants' Exhibit Nos. 10, 11 and 19 filed on 6/5/17.)

### 5. June 22, 1998 Incident

Plaintiff fails to proffer any evidence that had he known of this incident in 1999 that he could have linked it to any of the charged offenses. Plaintiff also fails to demonstrate that anyone had been arrested or charged in connection with this incident as of the time of his 1999 trial.

### 6. July 24, 1998 Incident

This incident is identified in the August 7, 2018 minute order as having occurred on July 14, 1998 but has been eliminated as irrelevant. The correct date is actually July 24, 1998. In any event, Plaintiff has failed to proffer any evidence that a suspect has been arrested or charged in connection with this crime. In other words, Plaintiff fails to demonstrate that he could have linked this incident to any of the charged offenses in 1999.

8

### 7. February 13, 1999 and May 15, 1999

Plaintiff has failed to link both of these incidents to the charged offenses. The suspect descriptors are not consistent as to these two incidents and the three charged incidents. (Defendants' MSJ Exhibit Nos. 8, 9, 10, 11 and 19 filed on 6/5/17). Pursuant to *Smith*, the 1999 incidents would not be material for that reason alone.

## V. QUALIFIED IMMUNITY APPLIES

### A. The Analysis Must Focus on the 'Conduct'

Defendants never violated Plaintiff's constitutional rights, including but not limited to the right to discover exculpatory evidence provided by the Fourteenth Amendment. Plaintiff has failed to identify any case law which provides that the unsolved crime reports at issue are 'exculpatory' or *Brady* material. Here, the so-called right to discover privileged information regarding ongoing criminal investigations absent a court order was not clearly established. No such right exists today as Defendants understand current California law. Even if said information was discoverable prior to Vargas 1999 trial, it would not have not a "difference in the outcome of the criminal case," because it was inadmissible.

As such, the proper question to be addressed is whether **all** reasonable officers would have known there was a so-called obligation to violate California law and disclose privileged, **inadmissible** information regarding ongoing criminal investigations as of the time of Vargas' criminal trial in 1999? Based on the state of the law in 1999 and even now, the answer is an unequivocal, "No!"

The United States Supreme Court reversed the Ninth Circuit wherein it concluded inadmissible polygraph results were *Brady* material in *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995). Further, the federal courts are not in uniformity whether 'inadmissible' evidence can form the basis of a *Brady* claim. (See *Pickford v. Janda*, 660 Fed.Appx. 494 (9th Cir. 2010); *Paradis v Arave*, 240 F.3d 1169 (9th Cir. 2001)(recognizing there was no uniform approach in the federal courts to the treatment of 'inadmissible' evidence as the basis of *Brady* claims, citing *Felder v. Johnson*, 180

9

F.3d 206, 212 n. 7 (5th Cir. 1999); *Wright v. Hopper,* 169 F.3d 695, 703 n. 1 (11th Cir. 1999); *Madsen v. Dormire*, 137 F.3d 602, 604 (8th Cir. 1998); *Beeman v. Freesmeyer*, 2015 U.S. App. LEXIS 527, *1 (7th Cir. 2015).)

In denying the remainder of the Officers' summary judgment motion, this Court committed clear error by failing to properly analyze the qualified immunity issue in light of the specific facts of this case as is required by *Kisela v. Hughes*, 548 U.S. __ (2018); *White v. Pauley*, 137 S.Ct. 548 (2017) and *Smith*, supra.

**B. Sources of "Clearly Established Law"**

In analyzing whether qualified immunity applies, this Court may immediately address prong 2 (i.e. whether the right at issue was clearly established), rather than undertake the two-step analysis. (See *Saucier v. Katz*, 533 U.S. 294, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)(holding that Saucier's sequence is not mandatory and gave court's discretion to grant qualified immunity on the basis of clearly established prong alone, without deciding in the first instance whether any right has been violated).)

Even if this Court disagrees with the Defendants' analysis on 'materiality,' 'prejudice,' and 'causation,' based on *Smith*, supra, qualified immunity applies. It was not clearly established or 'beyond debate' in 1999 that law enforcement officers were required to automatically disclose to the prosecution the existence of so-called similar, but unsolved crimes wherein said information was neither discoverable (absent a court order) or even admissible.

The most analogous *Brady* claim in the Ninth Circuit was addressed in 2010 and 2011 by the panels in *Smith*, supra, wherein the Court rejected the so-called 'material' nature of unsolved, similar arson crimes. Plaintiff fails to demonstrate that the applicable 2011 *Smith* opinion has been overturned or vacated. Defendants are not aware of any such subsequent, negative history. (See also *People v. Hall* (1986), 41 Cal.3d 826, 833; *People v. Littleton* (1992) 7 Cal.App.4th 906, 911.)

///

10

Vargas cannot point to any 'identifiable' suspect known to him in 1999 because there was no such person. In fact, the Ninth Circuit rejected an arguably more convincing *Brady* claim in *Coleman v. Calderon*, 150 F.3d 1105 (9th Cir. 1998), wherein four, identifiable 'suspects' were not charged and the prosecution allegedly withheld such evidence. *Coleman* was decided weeks before Vargas' arrest on July 21, 1998.

### C. Qualified Immunity and the *Beaman* Opinion

The analysis of *Smith* by the Ninth Circuit is in fact consistent with that of the Seventh Circuit in *Beaman v. Freesmeyer*, 2015 U.S. App. LEXIS 527, *1 (7th Cir. 2015). However, *Beaman* involved both a Section 1983 *Brady* claim and the determination of qualified immunity. The claim was based on 'inadmissible' evidence, like that of Vargas. In its analysis, the Court properly framed the qualified immunity question and stated,

> "... *The second question in the qualified immunity analysis is whether the right at issue was clearly established at the time and under the circumstances presented. A plaintiff can show that a right is "clearly established" by statute or constitution in at least two ways: (1) he can point to a clearly analogous case establishing the right to be free from the conduct at issue; or (2) he can show that the conduct was "so egregious that no reasonable person could have believed that it would not violate established rights." Smith v. City of Chicago, 242 F.3d 737, 742 (7th Cir.2001). Even if factual circumstances are novel, a right can still be clearly established so long as the state of the law at the time gave the defendants fair warning that their conduct was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). "A constitutional right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " Estate of Escobedo v. Martin, 702 F.3d 388, 404 (7th Cir.2012) (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001))."*

11

Vargas' argument against qualified immunity actually violates the degree of specificity required by the United States Supreme Court in *Kisela* and *White*. The *Beaman* Court rejected the same overly broad legal contentions Vargas makes about qualified immunity in this action, wherein it stated,

> *"Beaman argues that Brady "has been on the books since 1963 and easily qualifies as clearly established law." Steidl v. Fermon, 494 F.3d 623, 628 (7th Cir.2007). The withholding of materially exculpatory evidence violates the Due Process Clause. Id. He contends that the novelty of the factual circumstance cannot excuse the Brady violation where it is well-established that investigators who withhold exculpatory evidence violate the defendant's constitutional due process right. While it is true that the idea that police officers must turn over materially exculpatory evidence has been on the books since 1963, it certainly has not been on the books since 1963 that polygraph reports are materially exculpatory evidence. That is because in most states, polygraph reports are inadmissible at trial. See e.g., Jefferson, 235 Ill.Dec. 443, 705 N.E.2d at 60 ("[T]he general rule in Illinois is to preclude introduction of evidence regarding polygraph examinations and the results of those tests.")."*

> *" . . . Beaman also argues that it was clearly established in 1995 that evidence inculpating another suspect was Brady material. While that is true as a general matter, Beaman forms the question too broadly. In its broadest form, the relevant inquiry is whether inadmissible information inculpating another suspect could be Brady material. Again, Beaman points to no pre–1995 case from Illinois or the Supreme Court, and we are unable to find one, establishing that inadmissible evidence inculpating another suspect (to frame it broadly) or polygraph tests (to frame it narrowly) is Brady material."*

During the relevant time period, there was no clearly established legal precedent which provided that the officers were required to affirmatively produce their chrono, the unsolved crime reports or any related information based on California law. It is not

beyond debate that any such information would have been discoverable or admissible. Once again, the question of whether and when inadmissible evidence can be *Brady* material remains an open question in many jurisdictions today. (See also *United States v. Morales*, 746 F.3d 310 (7th Cir.2014)).

Qualified immunity must be applied here because officers are not penalized for failing to act or acting in situations wherein judges cannot themselves reach a consensus. Officers are not penalized for selecting the so-called losing side of a legal controversy. As such, qualified immunity applies and the remainder of the summary judgment motions should have been granted. (See *Wilson v. Layne*, 562 U.S.603 (1999))

## VI. CONCLUSION

Based on the foregoing, the Court should vacate its order August 7, 2018. In light of the points and authorities cited in the Motion for Reconsideration, and this Reply, the remainder of the Defendants' Motion for Summary Judgment should be granted. Finally, Plaintiff has abandoned his claims as to Defendant Richard Tamez.

Dated: September 13, 2018

**MICHAEL N. FEUER**, City Attorney
**THOMAS H. PETERS,** Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney

By: _____/s/ *Surekha A. Shepherd*_____
**SUREKHA A. SHEPHERD**, Deputy City Attorney

Attorneys for Defendants, **CITY OF LOS ANGELES**, **LOS ANGELES POLICE DEPARTMENT**, **MONICA QUIJANO**, **RICHARD TAMEZ** and **SCOTT SMITH**