**MICHAEL N. FEUER,** City Attorney - SBN 111529
**JAMES P. CLARK,** Chief Deputy City Attorney –SBN 64780
**CORY M. BRENTE,** Assistant City Attorney – SBN 115453
**GEOFFREY PLOWDEN,** Deputy City Attorney – SBN 146602
200 North Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Phone No.: (213) 978-7038
Fax No.:    (213) 978-8785
Email: geoffrey.plowden@lacity.org

*Attorneys for Defendants,* CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, MONICA QUIJANO, SCOTT SMITH AND RICHARD TAMEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LORENZO VARGAS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; COUNTY OF LOS ANGELES; OFFICE OF THE LOS ANGELES DISTRICT ATTORNEY; LOS AGELES SHERIFF'S DEPARTMENT; MONICA QUIJANO; RICHARD TAMEZ; and DOES 1-10 INCLUSIVE,<br><br>Defendants. | CASE NO. CV16-08684 SVW (AFMx)<br>*Hon. Stephen V. Wilson, Courtroom 10A*<br>*Hon. Alexander F. MacKinnon, Magistrate, 780 Roybal*<br><br>**DEFENDANT CITY OF LOS ANGELES' MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF'S MUNICIPAL LIABILITY CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DANIEL JENKS; EXHIBITS**<br>[Separate Statement of Uncontroverted Facts And Conclusions of Law, Declaration, Proposed Order; Proposed Judgment; Request For Judicial Notice; and Exhibits filed concurrently herewith]<br>DATE:   June 10, 2019<br>TIME:    1:30 p.m.<br>CTRM:   10A |

**TO THE HONORABLE COURT, PLAINTIFF AND HIS COUNSEL:**

**NOTICE IS HEREBY GIVEN** that on June 10, 2019 at 1:30 p.m. in Courtroom 10A before the Honorable Stephen V. Wilson, Judge of the United States District Court-Central District of California, located at 350 W. First Street, Los Angeles, CA 90012, Defendants City of Los Angeles and the Los Angeles Police Department will move this Court for an order granting partial summary judgment of the **Second Claim for Relief for Civil Rights Violations 42 USC 1983 ("*Monell* Violations") and the Third Claim**

i

**of Relief for a State Law Claim of** *Respondeat Superior*[1] in the Plaintiff's Second Amended Complaint ("SAC").

This motion is based upon the allegations of SAC, the Memorandum of Points and Authorities attached hereto, the attached supporting Declaration of Daniel Jenks and Geoffrey Plowden, the exhibits attached thereto; and the accompanying Request for Judicial Notice, Statement of Uncontroverted Facts and Conclusions of Law and/or any other oral and documentary evidence presented to the Court at the time of the hearing.

This motion was discussed in open court with counsel on April 15, 2019. Defendants sent a L.R. 7-3 meet and confer correspondence on April 30, 2019. Plaintiff indicated on May 8, 2019 he will oppose the motion, but has offered no opposing authorities.

Dated: May 15, 2019  **MICHAEL N. FEUER**, City Attorney
**JAMES P. CLARK,** Chief Deputy City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney

By: */S/ Geoffrey Plowden*
 **GEOFFREY PLOWDEN**, Deputy City Attorney

*Attorneys for Defendants,* CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, MONICA QUIJANO, SCOTT SMITH and RICHARD TAMEZ[2]

---

[1] Counsel for defendants recently reviewed the docket and found this claim had not been formally dismissed. As this claim does not, and could not, allege the mandatory compliance with California Tort Claims Act, it should be dismissed at this time.

[2] Defendant Tamez should also be dismissed formally. He remains on the docket as a named defendant, but plaintiff has indicated he is not pursuing his claims against Defendant Tamez.

# TABLE OF CONTENTS

**Page(s)**

**TABLE OF AUTHORITIES**………………………………………………..………iv

**MEMORANDUM OF POINTS AND AUTHORITIES**……………..……..…1

    I.     INTRODUCTION……………………………………………...……1

    II.    STATEMENT OF FACTS……………………………….…………2

    III.   PLAINTIFF CANNOT PROVE HIS *MONELL* CLAIM AGAINST THE CITY DEFENDANTS……………………………………………..3

A. Plaintiff's *Monell/Canton* claim conflates defendants' criminal discovery obligations with a convoluted constitutional injury claim (relating to uncharged, uncorroborated other crimes evidence)……………………………………..6

    IV.   PLAINTIFF'S THIRD CAUSE OF ACTION FOR STATE LAW *RESPONDEAT SUPERIOR* LIABILITY FAILS AS A MATTER OF LAW…………………………………………………………….…..7

    V.    CONCLUSION……………………………………………….……8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barker v. Fleming*,
  423 F.3d 1085 (9th Cir. 2005) ................................................................................. 6, 7

*City of Canton, Ohio v. Harris*,
  489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ......................... 1, 4, 5, 6

*City of Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985) .................................................................................................... 5

*Connick v. Thompson*,
  563 U.S. 51, 131 S. Ct. 1350 (2011) ....................................................... 3, 4, 5, 6, 7

*Davis v. City of Ellensburg*,
  869 F .2d 1230, 1233 (9th Cir. 1989) .................................................................... 4, 5

*Doughtery v. City of Covina*,
  654 F.3d 892 (9th Cir.2011) .................................................................................. 4, 6

*Flores v. Cty. of Los Angeles*,
  758 F.3d 1154 (9th Cir. 2014) ................................................................................... 3

*Merritt v. County of Los Angeles*,
  875 F.2d 765 (9th Cir. 1989) ................................................................................. 4, 5

*Rabinovitz v. City of Los Angeles*,
  287 F. Supp. 3d 933 (C.D. Cal. 2018) .................................................................. 3, 4

*Sweaney v. Ada County*,
  119 F.3d 1385 (9th Cir. 1997) ............................................................................... 4, 7

**California Cases**

*Janis v. State Lottery Comm'n*,
  68 Cal.App.4th 824 (1998) ..................................................................................... 7, 8

*People v. Hall* (1986)
  41 Cal.3d 826 ............................................................................................................ 4, 7

*People v Littleton* (1992)
  7 Cal.App.4th, 906, 911 ...................................................................................... 1, 4, 7

**Table of Authorities (continued)** ........................................................................Page(s)

*State v. Superior Court (Bodde)*,
   32 Cal.4th 1234 (2004) ................................................................................... 5, 8

**Federal Statutes**

42 USC 1983 ................................................................................................ ii, 1, 3-5

**California Statutes**

Cal Penal Code
   § 1054.1 (enacted 6/6/1990) ..................................................................... 1, 2, 5, 6

California Government Code
   § 945.4 ....................................................................................................... 1, 5, 7, 8

California Tort Claims Act ............................................................................... ii

**Other Authorities**

L.R. 7-3 ................................................................................................................ ii

Plaintiff's *Monell* ................................................................................................. 1

Plaintiff's *Monell/Canton* ............................................................................... iv, 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Luis Vargas filed his Complaint on November 21, 2016. The operative pleading is the Second Amended Complaint ("SAC") (Doc.113) which was filed on April 13, 2018, wherein Plaintiff alleges the following Claims for Relief: 1) Failure to disclose *Brady* evidence; 2) *Monell* violations; 3) State law claim for *respondeat superior*. This Court denied, in part, defendants' motions relative to the *Brady* claim, but did not formally dismiss the Third Cause of Action for state law claims. At the status conference of April 15, 2019, the Court ordered defendants to bring the instant motion as to the *Monell* claim.

Plaintiff's *Monell* claim is based on a very general failure to train theory against the City of Los Angeles (*Canton* claim). Plaintiff does not allege a policymaker was the moving force behind plaintiff's constitutional injury, nor does he allege a particular policymaker, acting in his official capacity, acted with deliberate indifference.

For the reasons stated herein, plaintiff's *Monell/Canton* claim is lacking in evidence and should be dismissed. Plaintiff's *Monell/Canton* claim conflates defendants' criminal discovery obligation with a convoluted constitutional injury claim (relating to uncharged, uncorroborated other crimes evidence). A *Canton* claim must be based on a failure to train that is "so obvious and the inadequacy so likely to result in violation of constitutional rights, that the policy makers can reasonably be said to have been deliberately indifferent to the need." Plaintiff cannot cite a case or statute requiring officers to disclose uncharged, unrelated other crimes evidence.[3]

Plaintiff's third claim for relief, a state law claim for *respondeat superior,* fails to allege compliance with the mandatory tort claim act requirements and should also be dismissed at this time.

---

[3] In fact, discovery of unsolved crime reports, wherein there was neither a charged or arrested subject (as we have here), was deemed **not** to be discoverable (i.e., to be turned over by police). *People v Littleton* (1992) 7 Cal.App.4th, 906, 911.

1

## II. STATEMENT OF FACTS

Plaintiff Luis Vargas' lawsuit stems from his release from custody wherein he now alleges he was wrongfully convicted of committing a rape and two attempted rapes in 1998. (Defendants' Statement of Uncontroverted Facts and Conclusions of Law (hereinafter "DSUF") Fact No. 1). Plaintiff contends the City of Los Angeles and the Los Angeles Police Department failed to train as to disclosing information pertaining to crimes identical to previous investigations and/or convictions, such as those Vargas was convicted of. (DSUF No. 2) And plaintiff contends the LAPD failed to train when such material constitutes *Brady* material and must be provided to the prosecution. (DSUF No. 3)

LAPD detectives are trained in written form on discovery in criminal cases. (DSUF No. 4) They are also trained on the job on discovery. (DSUF No. 5) The policy of the LAPD during the 1994-2000 time period was for detectives to produce all discovery to the prosecutor and let him/her decide what to turn over to the criminal defendant. (DSUF No. 6) In 1999, the California Penal Code mandated discovery as to certain items at the time. (DSUF No. 7 and Request for Judicial Notice).

> "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies:
> (a) The names and addresses of persons the prosecutor intends to call as witnesses at trial.
> (b) Statements of all defendants.
> (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged.
> (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial.
> (e) Any exculpatory evidence.
> (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."
> Cal Penal Code §1054.1 (enacted 6/6/1990)

2

In 2000, the LAPD also provided written training on *Brady* obligations, particularly as to evidence relating to witnesses' credibility. (DSUF No. 8).

California Peace Officer Standards and Training ("POST") did not, as of 1994-2000, have a mandatory training component on *Brady*. (DSUF No. 9). POST sets the minimum standards for training for all police agencies in California. (DSUF No. 10).

### III. PLAINTIFF CANNOT PROVE HIS *MONELL* CLAIMS AGAINST THE CITY DEFENDANTS.

Plaintiff alleges in the SAC in pertinent part, the City of Los Angeles "failed to train or supervise investigators … to disclose(ing) all exculpatory and impeachment evidence." (Doc. 113 at p. 47) Further, "as a result of this failure to properly train, supervise or provide policies and procedures (in this area)" the failure to supervise proximately caused Plaintiff's constitutional rights to be violated and led to his wrongful conviction and incarceration. (Doc. 113 at p. 48).

Failure to train is the most "tenuous" theory of municipal liability for the deprivation of constitutional rights. *Connick v. Thompson,* 563 U.S. 51, 61, 131 S. Ct. 1350, 1360 (2011).

Plaintiff cannot meet the highly elevated standard required for failure to train claims under § 1983. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379, 109 S. Ct. 1197, 1199, 103 L. Ed. 2d 412 (1989) (hereinafter "*Canton*"). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* 563 U.S. 51, 61, 131 S. Ct. 1350, 1360 (2011). "Accordingly, the City's policymakers must have been 'on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights.' " *Rabinovitz v. City of Los Angeles*,

287 F. Supp. 3d 933, 966 (C.D. Cal. 2018) (citing *Connick,* 563 U.S. at 61.) To allow otherwise would essentially institute "de facto *respondeat superior* liability." *Id.*

To show actual or constructive notice, plaintiff "must either present a 'pattern of similar constitutional violations by untrained employees' or they must show that the municipality 'has failed to train its employees to handle recurring situations presenting an obvious potential for' constitutional violations." *Id.* (citing *Connick*, 563 U.S. at 107, n. 24; *Board of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)) Plaintiff has no pattern evidence here.

The *Connick* court acknowledged that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident." *Id.* (Internal quotations omitted.) To hold cities liable for such specific criticisms would give "plaintiffs or courts carte blanche to micromanage local governments[.]" *Id.* at 68

Under certain circumstances, a municipality may be held liable under § 1983 for failure to properly train its employees. *City of Canton, Ohio v. Harris*, 489 U.S. at 388. In *Merritt v. County of Los Angeles,* 875 F.2d 765 (9th Cir. 1989), the Ninth Circuit articulated a three-part test for assessing municipal liability under § 1983 in failure to train cases.

First, Plaintiffs must establish the City's existing training program is inadequate. "The adequacy of a particular training program must be resolved in relation to the tasks the particular officers must perform. A training program will be deemed adequate if it enables officers to respond properly to the usual and recurring situations with which they must deal. *Merritt*, 875 F.2d at 7

Plaintiff's argument assumes the City's training program is inadequate. Defendants, in fact received training on *Brady*'s obligation to turn over exculpatory evidence. (DSUF Nos. 4-8) See, Daniel Jenks Declaration and exhibits.

As set forth above, POST does not require LAPD to train on *Brady*. (DSUF Nos. 9-10) Jenks Decl.

Second, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388, 109 S.Ct. at 1204. This heightened degree of culpability may be shown where "the need for more or different training is so obvious and the inadequacy so likely to result in violation of constitutional rights, that the policy makers can reasonably be said to have been deliberately indifferent to the need.... [I]n that event, the failure to train may fairly be said to represent a policy for which the city is responsible and for which the city may be held responsible if it actually causes injury." *Canton*, 489 U.S. at 390, 109 S.Ct. at 1205.

A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F .2d 1230, 1233 (9th Cir. 1989) (affirming summary judgment); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell ...*") In fact, in *Connick,* the U.S, Supreme Court found four other incidents (of convictions revered on *Brady* violations) insufficient to provide notice of inadequate training. *Id.,* at 62-63.

Plaintiff's argument assumes the City was on notice of a need for different training and ignored such a need with deliberate indifference. Defendants, in fact received training on Brady's obligation to turn over exculpatory evidence. (DSUF Nos. 4-8) Jenks Decl.

Finally, Plaintiff must show the inadequate training that manifests deliberate indifference by the City "actually caused" the constitutional deprivation at issue. *Merritt,* 875 F.2d at 770 (citing *Canton*, 489 U.S. at 391, 109 S.Ct. at 1207).

Here, Plaintiff argues that because he allegedly suffered a constitutional injury in this case, there must have been inadequate training that caused the deprivation. A single incident does not demonstrate deliberate indifference. As stated in *Connick*,

"To prove deliberate indifference, Thompson needed to show that Connick was on notice that, absent additional specified training, it was "highly predictable" that the prosecutors in his office would be confounded by those gray areas and make incorrect Brady decisions as a result. In fact, Thompson had to show that it was so predictable that failing to train the prosecutors amounted to conscious disregard for defendants' *Brady* rights." (internal citations omitted.)
*Connick*, 563 U.S. at 107.

Plaintiff must show the need to train the officers on *Brady* was so obvious and the failure to adopt such a specific training program was so egregious that it rose to the level of deliberate indifference. It will not suffice to show that an injury or accident could have been avoided "if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury...." *Canton*, 489 U.S. at 391, 109 S.Ct. at 1206. "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* See, also*, Doughtery v. City of Covina,* 654 F.3d 892, 900 (9th Cir.2011) ("Mere negligence in training or supervision … does not give rise to a *Monell* claim.") Plaintiff assumes the LAPD was negligent in its training, but that assumption is irrelevant.

**A. Plaintiff's *Monell*/Canton claim conflates defendants' criminal discovery obligations with a convoluted constitutional injury claim (relating to uncharged, uncorroborated other crimes evidence).**

Contrary to any existing precedent or statute, Plaintiff's SAC claims that it was clearly established in the 1996-2000 time period at issue in this case that police officers were obligated to disclose reports of ongoing, unsolved similar crimes. And as such, the failure to do so constitutes a *Brady* violation, resulting in a constitutional harm. He is wrong. POST, setting forth the minimum standards for training, takes no such position. California statutory law, as seen in Cal. Penal Code 1054.1, takes no such

position.[4] And, California courts at the time have not so held. See, *Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005) (prosecutor not required to turn over files reflecting leads or ongoing investigations, which fail to contain exonerating or impeaching information). *Sweaney v. Ada County*, 119 F.3d 1385, 1388 (9th Cir. 1997); *People v. Littleton,* (1992) 7 Cal.App.4th 906, 911; *People v. Hall,* (1986) 41 Cal.3d 826, 832.)

Per *Connick,* there can be no failure to train and/or deliberate indifference if there was no previous case which held that unrelated unsolved crime reports constituted *Brady* material. Plaintiff has no evidence that the LAPD was on notice prior to 1999 that prior unsolved crimes were *Brady* evidence. While the main claim in this case is such crime reports are "exculpatory", plaintiff would be hard pressed to find any law or POST learning domain which supports his theories.

Plaintiff's willful suppression of evidence (due process) claim is wholly unrelated to any alleged failure to train by the LAPD. California case law, statutes and POST minimum training are silent as to the proposition that *Brady* material includes reports of unsolved, uncharged similar crimes. In fact, California case law rejects that proposition. It would be patently unfair to hold the City liable for failure to train when it was not on notice there was an obvious need to train on that subject.

California Government Code section 945.4 (when read together with Section 950.2) provides that no lawsuit can be brought against a public entity or public employee which a claim is required "until a written claim therefor has been presented" to the public entity.[5] Failure to submit a pre-lawsuit claim is fatal to a state tort law cause of action.

---

[4] Cal. Pen. Code §1054.1 does not define exculpatory evidence as so-called similar crimes evidence.

[5] Section 945.4 states: Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division.

*Janis v. State Lottery Comm'n*, 68 Cal.App.4th 824, 832 (1998)

In fact, failure to allege compliance in the complaint with the pre-lawsuit claim requirement is fatal to a state tort law claim for damages, and the claim must be dismissed at the demurrer stage under Section 945.4. *State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1239 (2004)

Plaintiff's SAC does not, and could not allege compliance with the pre-lawsuit tort claim compliance requirement. Thus, the third cause of action must be dismissed as to all defendants.

## V. CONCLUSION

For the foregoing reasons, Defendants City of Los Angeles and the Los Angeles Police Department respectfully request their Motion for Partial Summary Judgment be granted.

**MICHAEL N. FEUER,** City Attorney
**JAMES P. CLARK,** Chief Deputy City Attorney
**CORY M. BRENTE**, Assistant City Attorney

By: /S/ -*Geoffrey Plowden*
**GEOFFREY PLOWDEN**, Deputy City Attorney

*Attorneys for Defendants,* CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, MONICA QUIJANO and RICHARD TAMEZ

---

Section 950.2 states: Except as provided in Section 950.4, a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred under Part 3 (commencing with Section 900) of this division or under Chapter 2 (commencing with Section 945) of Part 4 of this division. This section is applicable even though the public entity is immune from liability for the injury.

8