# Declaration of Daniel Jenks
Luis Lorenzo Vargas v. City of L.A., *et al.* CV16-068684SVW
Defendants' Motion for Partial Summary Judgment of Plaintiff's
Municipal Liability Claim

## DECLARATION OF DANIEL JENKS

I, Daniel Jenks, declare the following to be true and correct:

1.    I am a Detective III with the Los Angeles Police Department. I have been a detective for 23 years, 9 of those years as a Detective III. I am familiar with the training and policies of the Los Angeles Police Department. I am familiar with POST (California Peace Officer Standards and Training) requirements.

2.    I am familiar with the allegations of the *Vargas v. City of Los Angeles* case. I gave a deposition in this cases as the person most knowledgeable as to *Brady* obligations.

3.    I am familiar with training provided by the LAPD in the 1994-2000 time period relating to law enforcement's obligations to provide exculpatory material to the prosecutor.

4.    As of 2000, I know of no POST learning domain that required officers to be trained on what constitutes *Brady* material. There was, and still is, no reference in POST training to unsolved, uncharged similar crime reports as being "exculpatory" material which must be disclosed by police officers to the prosecutor. POST sets forth the minimum standards for training for all police departments in the state.

5.    I am familiar with Prop 115, codified as California Penal Code Section 1054.1. All officers are trained by LAPD to comply with this statute. As I understand it, this statute requires all officers to provide discovery of exculpatory material to the prosecutor. As to detectives in the 1994-2000 time period, this generally meant that you give your "book" to the prosecutor. In this case, my understanding is there was a serial rape book, which was handed over to the District Attorney for review. Such disclosure is consistent with LAPD training at the time.

6.    Prop 115, codified as California Penal Code Section 1054.1, does not state that unsolved, uncharged similar crime reports are exculpatory and must be disclosed to the prosecutor.

7.    During the 1994-2000 time period, LAPD officers and detectives were trained to provide exculpatory material to the prosecutor. A true and correct copy of a Legal Bulletin

9

from February, 1976, attached to my declaration as Exhibit 1, reflects the training at the time. The bulletin provides that LAPD cooperate in discovery during the criminal proceedings, and that officers should inform the prosecuting attorney of the existence of evidence that has a tendency to show that the defendant is innocent of the charges.

8.    In 2000, the LAPD provided additional written policies, upon which officers were trained on, that required officers to reveal information that may be exculpatory in nature. Attached as Exhibit 2 to my declaration is a true and correct copy of Memorandum No. 1, from March, 2000. While this Memorandum primarily focuses on impeachment evidence relating to officers' credibility as possible *Brady* material, the Memorandum does discuss the requirement to disclose exculpatory material.

9.    This Memorandum No. 1 at page 4 reiterates the general training that exculpatory information is generally presented with the case when a filing is requested. In common parlance, this means when an officer or detective requests criminal charges, he/she gives the entire case book to the prosecutor.

10.    In the 1994-2000 time period, I am unaware of any POST learning domain, statute or case which required LAPD officers or detectives deem unsolved, uncharged similar crime reports be disclosed.

   I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 14th day of May, 2019 at Los Angeles, California.


Daniel Jenks


10

Decl of Jenks - 11

# EXHIBIT 1 to

DEFENDANT CITY OF LOS ANGELES' MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF'S MUNICIPAL LIABILITY CLAIM



# LEGAL BULLETIN

### LOS ANGELES POLICE DEPARTMENT -- LEGAL SYSTEMS SECTION

*Volume 1, Issue 4*

## CRIMINAL DISCOVERY

*February 9, 1976*

### History

*Discovery* is a term used to describe the process of exchanging relevant information between parties prior to a trial. Its purpose is to assist in the ascertainment of the truth. It allows the parties to focus on those issues which are truly in dispute.

Historically, the accused in a criminal prosecution could not compel the production of evidence in the possession of the prosecution. The accused was denied access to the prosecution's evidence in the belief that to reveal evidence before trial would enable the defendant to obtain perjured testimony and fabricate evidence to meet the prosecution's case. In recent years, however, courts have viewed the matter differently. Today the emphasis is on the ascertainment of truth as it is revealed within the context of a fair trial. As a result, an accused may obtain information from the prosecution through discovery. Generally, the following are subject to discovery:

- names and addresses of material witnesses
- written and recorded statements of material witnesses
- written and recorded statements made by a defendant, a co-defendant, or an alleged co-conspirator
- reports made by experts in connection with physical evidence
- physical evidence (a reasonable inspection thereof)
- oral statements made by the defendant which are known to the prosecution

### Types of Discovery

There are two types of discovery, formal and informal. Formal discovery begins with defense counsel making a motion for discovery which is followed by a court hearing. If it is determined that the items requested are relevant and not otherwise privileged, a court order is issued which compels the prosecution to produce the requested materials. Failure to comply with the court order can result in inadmissibility of the evidence and other sanctions.

The Los Angeles Superior Court has adopted a policy to encourage informal discovery in order to streamline the process of exchanging information. Defense counsel simply files a written request for disclosure with the court and the prosecutor. The prosecutor is responsible for contacting the investigating officers to obtain the requested materials. If the request appears improper or unreasonable, the prosecutor can oppose it by filing a notice of noncompliance, at which time the court will schedule a hearing into the matter. Otherwise, the prosecutor will produce the requested items and a court hearing will be avoided. Under this process the investigating officer is required to sign a statement stating that all information or evidence known to the investigative agency which has been requested or ordered discovered has been produced.

*February 9, 1976*

## Practical Application

The District Attorney has indicated that his office will engage in discovery practices with even less formality than required by the Superior Court's Informal Discovery Policy. A simple request by the defense for the prosecution to produce the needed materials will usually be honored. The prosecutor will then ask for the cooperation of the investigating officer in providing the items requested.

Compliance with such informal requests may in some instances impose burdensome duties on officers. Nevertheless, the court has indicated that anything less than good faith compliance with a discovery request will not be acceptable. When items which are the proper subject of discovery are withheld, the court may order disclosure or impose sanctions against the prosecution such as excluding evidence not disclosed, dismissing the case, or taking other action deemed appropriate.

Compliance with discovery requests can be accomplished by providing to the prosecutor copies of written materials requested by him and by arranging through the prosecutor for the defense attorney to have an opportunity to inspect other physical evidence, photographs, or tape recordings included in the discovery request.

If the District Attorney's Office and the Department cooperate and comply with discovery requests in this less formal manner, both the court hearing and much paperwork will be avoided. Regardless of the type of procedures which are employed, good faith compliance with discovery requests is essential. When so requested by the Deputy District Attorney, officers will sign a statement which will become part of the Deputy District Attorney's statement of compliance. The statement will be in the following format:

> "I am the investigating officer in *People v.* _____,
> case number _____. All information and/or evidence known
> to the investigating agency as to those matters requested and/
> or ordered discovered is attached to this statement.
>
> Signature _____ "

Remember, discovery requests are continuing requests and any new information or evidence acquired after receiving a discovery request up to the end of the trial must be made known to the prosecutor so that it may be included in the items produced through discovery.

One final note to remember is that the prosecutor has a duty to inform the defense about any evidence that has a tendency to show that the defendant is innocent of the charge. Even without a discovery request, officers should recognize an ongoing responsibility to inform the prosecuting attorney of the existence of such evidence.

Jenks Decl - Exh 1, Pg 14

# EXHIBIT 2 to

DEFENDANT CITY OF LOS ANGELES' MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF'S MUNICIPAL LIABILITY CLAIM

OFFICE OF THE CHIEF OF POLICE

MEMORANDUM NO. 1                                      March 1, 2000

SUBJECT:  IMPACT OF EMPLOYEE CONDUCT ON CREDIBILITY AS A WITNESS

This Memorandum notifies employees of the possible legal
consequences of certain behavior which may or may not amount to
misconduct and the impact this may have on an employee's
credibility as a witness, and continued career as a member of a
law enforcement agency.

A series of case decisions beginning with *Brady v. Maryland*,
*373 U.S. 83 (1963)* and including *In re Brown, 17 Cal. 4th 873
(1998)*, require the prosecution to reveal to the defense
information that may be exculpatory in nature, including
potential impeachment information.  Potential impeachment
information may include but is not strictly limited to:

* Specific instances of conduct of a witness for the purpose of
  attacking the witness' credibility or character for
  truthfulness;
* Evidence in the form of opinion or reputation as to a
  witness' character for truthfulness;
* Prior inconsistent statements; and,
* Information that may be used to suggest that a witness is
  biased.

The burden to disclose such evidence rests solely with the
prosecutor and not with the agencies who submit a case or other
evidence to the prosecutorial agency.  However, agencies that
conduct criminal investigations have an ethical obligation to
reveal the possibility of potential impeachment information and
exculpatory evidence to prosecutors.  This was noted by the Court
in *Smith v. Secretary Dept. of Corrections, 50 F.3d 801,
824 (10th Cir. 1995)*, ". . . 'the prosecution' extends to law
enforcement personnel and other arms of the state involved in
investigative aspects." Prosecutors take very seriously their
obligation to ". . . disclose evidence favorable to the accused
that, if suppressed, would deprive the defendant of a fair trial;
. . ." *United States v. Bagley, 473 U.S. 667; 105 S. Ct. 3375*.

The net effect of the *Brady* decision and subsequent related cases
is to require that prosecutors reveal potential impeachment
information or the fact that such information exists to the
defense in a criminal proceeding should the concerned employee be

MEMORANDUM NO. 1                 -2-                    March 1, 2000

called as a witness.  The courts have determined that certain
conduct may raise serious doubt as to a person's character and
credibility as a witness, whether a member of the public, a
police officer or civilian employee.  Such conduct, committed on
or off duty, includes but is not limited to:

* Moral turpitude;
* Dishonesty;
* Fraud;
* Certain felonies;
* Hit and run traffic collisions;
* Felony driving under the influence;
* Sexual or physical abuse of women or children;
* Threats or use of force against a peace officer;
* Actions or statements which reveal a possible bias or
  prejudice; and,
* False or misleading statements.

(See *The People v. Castro, 38 Cal. 3d 301 (1985), Toutounjian v.
Immigration and Naturalization Service, 959 F. Supp. 598 (1997)*
and other cases referenced therein regarding moral turpitude and
character.)

A false statement to a complaint investigator interviewing an
employee could <u>overshadow</u> an original allegation of misconduct
not related to an employee's credibility.  The mere utterance of
a false or misleading statement may preclude an employee from
being perceived as a credible witness in the future.  The court
in *LaChance v. Erickson, 522 U.S. 262, 118 S. Ct. 753 (1998)* held
that **the core of due process is the right to notice and a
meaningful opportunity to be heard, but DOES NOT include a right
to make false statements regarding alleged employment-related
misconduct.**  And in *Bryson v. United States, 396 U.S. 64,
24 L. Ed. 2d 264, 90 S. Ct. 355 (1969)*, the court said:  "Our
legal system provides methods for challenging the Government's
right to ask questions - lying isn't one of them.  A citizen may
decline to answer the question, or answer it honestly, but he
cannot with impunity knowingly and willfully answer it with a
falsehood."

While the Department has actively maintained the highest
standards of employee conduct, *Brady* and the related evolving
case law impose serious personnel considerations on City and
Department management.  **Once an employee's credibility is**

Jenks Decl - Exh 2, Pg 17

MEMORANDUM NO. 1                    -3-                    March 1, 2000

**tainted, he or she may no longer be called upon as an effective witness in a criminal matter since any testimony provided by such an employee could significantly damage the case or make it impossible to achieve a successful prosecution.**  Obviously, the officer who cannot testify cannot be allowed to make arrests, conduct criminal investigations, or engage in any activity which may require his or her testimony in a subsequent criminal case. Clearly, the employee who is subject to such restrictions is unable to perform the essential functions of a police officer. In a recent case a police officer lied about his involvement in a hit and run and was subsequently terminated.  The officer was convicted by a plea of no contest to a misdemeanor charge.  While such a plea is unavailable for use in an administrative proceeding, evidence was presented on the underlying crimes.  The Court noted that the City, in considering the termination of Ziegler, could consider the impact which the conviction and publicity surrounding it would have on the officer's ability to testify credibly in court as a police officer *(Ziegler v. City of South Pasadena, 1999 Cal. App. LEXIS 642)*.  The impact of loss of credibility on an employee's career in law enforcement, whether a sworn or civilian employee, may be devastating.  It is not in the best interest of the citizens of the City to retain an employee who cannot testify in court.  It may also necessitate the transfer of a civilian employee to another job classification or other City department, or removal from his or her position.

The consequences of *Brady* and related cases may go beyond matters which have been criminally, civilly, or administratively adjudicated.  Prior to completion of an investigation or adjudication, allegations of misconduct may be so egregious as to taint the credibility of an accused employee; and, as such, any testimony provided by such an employee, could significantly damage the prosecution of a criminal case.  The Law Enforcement Code of Ethics, Core Values, Management Principles and policies of the Department mandate that the Department effectively serve the community while maintaining the public's trust.  To ensure that the Department meets this obligation, the Chief of Police, pursuant to his authority in Section 206 of the City Charter, will reassign officers to a non-field related assignment when their actions could raise serious doubt as to the employee's credibility.  Assignment to a non-field related capacity means the employee will not be placed in a position wherein they will be required to make arrests, collect or handle evidence, prepare arrest reports, take statements, prepare or submit affidavits for

Jenks Decl - Exh 2, Pg 18

MEMORANDUM NO. 1                    -4-                    March 1, 2000

search warrants or other legal actions, etc., which may require them to provide testimony in a court of law. Likewise, civilian employees whose actions involve similar conduct may be reassigned and/or have duty restrictions imposed to preclude damaging the prosecutor's case.

There are times when the investigation or subsequent testimony at a Board of Rights or other disciplinary proceeding may remove doubt as to an employee's credibility and allow their return to a non-restricted assignment.  In other cases, the employee's credibility may be permanently tainted, and, if he or she remains an employee of the Department, they should expect the restrictions to continue.

The majority of information that may be exculpatory in nature, other than confidential peace officer personnel records, is generally presented with the case when a filing is requested and/or in conjunction with trial preparation.  Pending the adoption of any proposed changes, the Department will continue its practice of releasing confidential peace officer personnel records pursuant to the provisions of Evidence Code Section 1043.

**All employees are reminded of their obligation to conduct themselves in such a manner that their credibility is not brought into question and they are a believable and an effective witness in a court of law should they be called upon to testify.**

Commanding officers shall ensure that all employees in his or her command are served with a personal copy of this Memorandum and sign the attached Acknowledgment Receipt.  Completed Acknowledgment Receipts shall be filed in the divisional personnel package of the concerned employee.

**BERNARD C. PARKS**
**Chief of Police**

**DISTRIBUTION "D"**