**JAN STIGLITZ (SBN 103815)**
LAW OFFICE OF JAN STIGLITZ
14462 Garden Trail
San Diego, CA 92127
Tel.: (619) 807-5890

**ALEXANDER J. SIMPSON (SBN 235533)**
ajs@cwsl.edu
225 Cedar St.
San Diego, CA 92101
T: (619) 515-1525
F: (619) 615-1425

**BRETT A. BOON (SBN 283225)**
brett@boonlawoffice.com
BOON LAW
411 Camino Del Rio S, Suite 106
San Diego, CA 92108
T: (619) 358-9949
F: (619) 365-4926

**CRAIG S. BENNER (SBN 283913)**
craig@bennerlawfirm.com
BENNER LAW FIRM
411 Camino Del Rio S, Suite 106
San Diego, CA 92108
T: (619) 595-6795
F: (619) 595-6796

Attorneys for Plaintiff
**LUIS LORENZO VARGAS**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LUIS LORENZO VARGAS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; ~~COUNTY OF LOS ANGELES; OFFICE OF THE LOS ANGELES DISTRICT ATTORNEY; LOS ANGELES SHERIFF'S DEPARTMENT;~~ MONICA QUIJANO; ~~RICHARD TAMEZ;~~ SCOTT SMITH; and DOES 1-10 | Case No. 2:16-cv-08684-SVW-AFM<br><br>**OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF'S MUNICIPAL LIABILITY CLAIM**<br><br>**HON. STEPHEN V. WILSON**<br>Courtroom 10A |

1  INCLUSIVE,

2  Defendants.

Date: June 10, 2019
Time: 1:30 p.m.
Complaint Filed: November 12, 2015
Trial Date: June 25, 2019

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................ii

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF'S MUNICIPAL LIABILITY CLAIM............................... 1

I.    Defendants Violated Their Obligations to Train and Supervise Their Agents and Employees in the Proper Handling and Disclosure of <u>Brady</u> Material, in Violation of <u>Monell</u>.......................................................................... 2

    A.    Defendants Are Not Entitled to Summary Judgment on Vargas's Monell Claim................................................................... 2

    B.    The LAPD Failed to Train, Supervise, and/or Discipline its Employees, Violating Mr. Vargas's Constitutional Rights.............................. 8

    C.    Particular Decisions or Actions Made by Individuals Considered to be Final Policymakers for Defendant LAPD Directly Violated Mr. Vargas's Constitutional Rights................................................... 9

    D.    Individuals With Final Policy-making Authority Ratified Defendants Quijano's and Smith's Unconstitutional Decisions and Actions, in Violation of Mr. Vargas's Constitutional Rights........................................... 10

    E.    Defendants' Attempts to Narrowly Frame the Issue Are Incorrect, and Their Arguments Are Contrary to This Court's Holdings on the Prior Motion for Summary Judgment........................................... 10

II.    Defendants Are Not Entitled to Summary Judgment on Plaintiff's Claim of <u>Respondeat Superior</u> Liability................................................... 15

III.    Plaintiff's Opposition Is Timely....................................................17

IV.    Conclusion.......................................................................... 18

| OPP. TO MOTION FOR PARTIAL SUMM. J'MENT | 2:16-CV-08684-SVW-AFM |

**TABLE OF AUTHORITIES**

Cases

Arendale v. City of Memphis, 519 F.3d 587 (6th Cir. 2008)...........................................9

Avalos v. Baca, 596 F.3d 583 (9th Cir. 2010).....................................................3, 10

Barbee v. Warden, 331 F.2d 842 (4th Cir.1964)...........................................13, 14

Baron v. Suffolk County Sheriff's Dept., 402 F.3d 225 (1st Cir. 2005)...........................7

Boyd v. Benton Cnty., 374 F.3d 773 (9th Cir.2004)...........................................14

Brady v. Maryland, 373 U.S. 83 (1963)................................................. passim

Brewster v. Shasta County, 275 F.3d 803 (9th Cir. 2001)...................................3

Carrillo v. County of Los Angeles, 798 F.3d 1210 (9th Cir. 2015)...........................12, 14

Cash v. Hamilton Cty. Dep't of Adult Prob., 388 F.3d 539 (6th Cir. 2004)....................4

City of Canton v. Harris, 489 U.S. 378 (1989)...........................................3, 8

City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985)........................................4

City of St. Louis v. Praprotnik, 485 U.S. 112 (1998)......................................3, 9

Cox v. City of Dallas, 430 F.3d 734 (5th Cir. 2005)........................................7

Davis v. City of Ellensburg, 869 F .2d 1230 (9th Cir. 1989).................................4

Drumgold v. Callahan, 707 F.3d 28 (1st Cir. 2013)........................................11

Goldstein v. City of Long Beach, 715 F.3d 750 (9th Cir. 2013).............................4

Gernetzke v. Kenosha Unified Sch. Dist. No. 1, 274 F.3d 464 (7th Cir. 2001)...............9

Gregory v. City of Louisville, 444 F.3d 725 (6th Cir. 2006)..............................2, 4

Hernandez v. Terrones, 397 Fed.Appx. 954 (5th Cir. 2010)................................11

Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).....................14

Kyles v. Whitley, 514 U.S. 419 (1995).................................................6, 11

McMillan v. Johnson, 88 F.3d 1554 (11th Cir. 1996)......................................11

Moldowan v. City of Warren, 578 F.3d 351 (6th Cir. 2009)...............................11, 13

Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935).......................12

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)................................. passim

Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379 (4th Cir. 2014).... 11, 14

<u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986)..................................................9

<u>Pitts v. County of Kern</u>, 17 Cal.4th 340 (1998).....................................................3

<u>Price v. Sery</u>, 513 F.3d 962 (9th Cir. 2008)........................................................4

<u>Quinn v. Monroe Cty.</u>, 330 F.3d 1320 (11th Cir. 2003)..............................................9

<u>Smith v. City of Chicago</u>, 242 F.3d 737 (7th Cir.2001)...........................................15

<u>Steidl v. Fermon</u>, 494 F.3d 623 (7th Cir. 2007)..............................................11, 15

<u>Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.</u>, 34 Cal.4th 441 (2004)........................................................................16

<u>Tatum v. Moody</u>, 768 F.3d 806 (9th Cir. 2014)......................................................6

<u>Tharling v. City of Port Lavaca</u>, 329 F.3d 422 (5th Cir. 2003)....................................9

<u>Thomas v. City of Philadelphia</u>, 290 F.Supp.3d 371 (E.D. Penn. 2018).............................11

<u>Thomas v. Cty. of Riverside</u>, 763 F.3d 1167 (9th Cir. 2014).......................................3

<u>Ulrich v. City & Cty. of S.F.</u>, 308 F.3d 968 (9th Cir. 2002)......................................3

<u>United States v. Blanco</u>, 392 F.3d 382 (9th Cir.2004)...........................................13

<u>United States v. Butler</u>, 567 F.2d 885, 891 (9th Cir.1978).......................................13

<u>United States v. Zuno-Arce</u>, 44 F.3d 1420 (9th Cir.1995)........................................13

<u>Wilson v. Layne</u>, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).........................14

**Code Sections**

Cal. Gov. Code § 910.............................................................................15

Cal. Gov. Code § 954.4..........................................................................15

OPP. TO MOTION FOR PARTIAL SUMM. J'MENT          2:16-CV-08684-SVW-AFM

**JAN STIGLITZ (SBN 103815)**
LAW OFFICE OF JAN STIGLITZ
14462 Garden Trail
San Diego, CA 92127
Tel.: (619) 807-5890

**ALEXANDER J. SIMPSON (SBN 235533)**
ajs@cwsl.edu
225 Cedar St.
San Diego, CA 92101
T: (619) 515-1525
F: (619) 615-1425

**BRETT A. BOON (SBN 283225)**
brett@boonlawoffice.com
BOON LAW
411 Camino Del Rio S, Suite 106
San Diego, CA 92108
T: (619) 358-9949
F: (619) 365-4926

**CRAIG S. BENNER (SBN 283913)**
craig@bennerlawfirm.com
BENNER LAW FIRM
411 Camino Del Rio S, Suite 106
San Diego, CA 92108
T: (619) 595-6795
F: (619) 595-6796

Attorneys for Plaintiff
**LUIS LORENZO VARGAS**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LUIS LORENZO VARGAS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; ~~COUNTY OF LOS ANGELES; OFFICE OF THE LOS ANGELES DISTRICT ATTORNEY; LOS ANGELES SHERIFF'S DEPARTMENT;~~ MONICA QUIJANO; ~~RICHARD TAMEZ;~~ SCOTT SMITH; and DOES 1-10 | Case No.  2:16-cv-08684-SVW-AFM<br><br>**OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF'S MUNICIPAL LIABILITY CLAIM**<br><br>**HON. STEPHEN V. WILSON**<br>Courtroom 10A |

INCLUSIVE,

Defendants.

Date: June 10, 2019
Time: 1:30 p.m.
Complaint Filed: November 12, 2015
Trial Date: June 25, 2019

Plaintiff LUIS LORENZO VARGAS, by and through his attorneys, Jan Stiglitz, Alexander Simpson, Brett Boon, and Craig Benner, hereby submits this Opposition to Defendants' Motion for Partial Summary Judgment of Plaintiff's Municipal Liability Claim ("MPSJ"), filed with this Court on May 15, 2019.

## I.

## Defendants Violated Their Obligations to Train and Supervise Their Agents and Employees in the Proper Handling and Disclosure of Brady Material, in Violation of Monell

Defendants have argued Plaintiff cannot establish a Monell claim because Los Angeles Police Department ("LAPD") officers were properly trained and supervised in their Brady obligations. Even a cursory examination of Defendants' arguments shows the factual inaccuracies and legal inconsistencies upon which these arguments are based.

**A.   Defendants Are Not Entitled to Summary Judgment on Vargas's Monell Claim**

It has long been established that municipal entities may be named defendants in a Section 1983 lawsuit. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978) ("Monell"). There are numerous avenues to establishing a Monell claim, including:

- A § 1983 plaintiff may satisfy their burden by establishing a custom or practice that although not officially adopted, is a pervasive, long-standing practice that has the force of law. Gregory v. City of Louisville, 444 F.3d 725 (6th Cir. 2006) [City held to be an appropriate § 1983 defendant for failure to train on handling exculpatory evidence and for its practice of suggestive shows].

- A § 1983 plaintiff may establish their claim by pointing to department failures including, but not limited to, a failure to train, failure to supervise, failure to discipline, or failure to adequately screen. City of Canton v. Harris, 489 U.S. 378 (1989).

- A § 1983 claim may be stablished by pointing to a particular decision or act made by someone who is asserted to be a final policymaker for the entity. <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1998).

- "The plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action." <u>Avalos v. Baca</u>, 596 F.3d 583, 588 (9th Cir. 2010).

The Ninth Circuit Court of Appeals has also held that once evidence supporting an allegation of delegating policymaking authority for § 1983 lability purposes is presented, the ultimate determination becomes a question of fact inappropriate for summary judgment. <u>See Thomas v. Cty. of Riverside</u>, 763 F.3d 1167, 1171 (9th Cir. 2014) [reversing the District Court's granting on summary judgment for the County Defendant based on a failure to present supporting evidence, holding that evidence was presented supporting the allegation, creating a question of fact, and therefore the granting of summary judgment was improper]; <u>see also Ulrich v. City & Cty. of S.F.</u>, 308 F.3d 968, 986 (9th Cir. 2002).

Here, Vargas has asserted claims based on the LAPD's failure to properly train and supervise its officers in the disclosure of exculpatory material, or potentially exculpatory material, and on the scope of the officers' obligations under <u>Brady</u>. Based on <u>Brewster v. Shasta County</u>, 275 F.3d 803, 805 (9th Cir. 2001), the LAPD's failure to supervise Defendants Quijano and Smith can be a basis for liability under <u>Monell</u>.

Decisions regarding the supervision and discipline of employees are part of the City's "administrative oversight system" system. <u>See Pitts v. County of Kern</u>, 17 Cal.4th 340, 363 (1998) [the conclusion that the district attorney is a state actor "might differ were plaintiffs challenging a district attorney's alleged action or inaction related to hiring or firing an employee."] Here, the City, through the actions of the LAPD and its agents, failed to adequate train and supervise its employees in the proper handling and disclosure of <u>Brady</u> material, and this failure directly led to Vargas being deprived of critical third-party culpability evidence which could have established to the jury that another individual

was responsible for the sexual assaults of which he was accused. "Unlike the California Supreme Court, [the Ninth Circuit] reach[es] a consistent conclusion here: [municipalities] should be held liable for their administrative policies and procedures, including the training of their employees *and* the hiring and firing of those employees." Goldstein v. City of Long Beach, 715 F.3d 750, 764 (9th Cir. 2013), emphasis in original.

Defendants allege Plaintiff's claims rely on "prov[ing] the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." MPSJ, p. 5. This case does not present a narrowly-defined, one-time constitutional violation of the type contemplated by Defendants' cited cases of Davis v. City of Ellensburg, 869 F .2d 1230, 1233 (9th Cir. 1989) and City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). The facts regarding the investigation—and the completely inadequate disclosure of exculpatory material, including information about other sexual assaults with identical *modus operandi* occurring *after Plaintiff was arrested*—are in fact mere symptoms of the disease with which the LAPD was infected at the time of Plaintiff's case. At bottom, LAPD simply did not bother to train its employees on their Brady obligations, did not bother to supervise its employees to ensure those obligations were being honored, and did not discipline those employees when those obligations were not met.

One of the primary ways upon which to establish a Monell claim is through constitutional violations as a result of a practice or custom that has the force of law, and for which the entity may be held responsible under Section 1983. Gregory v. City of Louisville, supra, 444 F.3d 725; see also Cash v. Hamilton Cty. Dep't of Adult Prob., 388 F.3d 539 (6th Cir. 2004); Price v. Sery, 513 F.3d 962 (9th Cir. 2008) [holding that although the policy as written did not facially violate Plaintiff's constitutional rights, a question of fact existed as to the police department's interpretation of it and longstanding custom or practice that could establish a Monell claim under Section 1983]).

As noted *ante*, Defendants had no clearly established policy with regards to the disclosure of Brady material, even thirty-six years after its decision and numerous cases

interpreting and further defining its mandates. Indeed, the individual proffered by Defendant LAPD as the Person Most Knowledgeable in <u>Brady</u> training and obligations, Daniel Jenks, testified in his deposition that the LAPD performed absolutely no training whatsoever to its employees on <u>Brady</u> or its obligations until March 2000, the year after Plaintiff's trial and conviction. Jenks Depo, p. 22:19-22.   In fact, Jenks—and, by extension, the LAPD—testified that he believed <u>Brady</u>, published in 1963, was decided in 1998. Jenks Depo, pp. 22:25, 23:1.   Instead, Jenks stated LAPD training was focused on "discovery" obligations, and the policy was to turn over all "discovery" to the district attorney. (Defendants' Statement of Uncontroverted Facts, #5.)   Discovery obligations are creatures of statute.   <u>Brady</u> obligations are much broader, and derive directly from the Fourteenth Amendment to the United States Constitution.   They are qualitatively different.

The two supporting documents submitted by Defendants do not help their position that this "discovery" training sufficed to train its employees on <u>Brady</u> at the time of the Vargas investigation.   Indeed, these documents exemplify the dearth of any training, meaningful or otherwise, on <u>Brady</u> or its obligations.   The first document, Exhibit 1 of the MPSJ, is a "Legal Bulletin" dated February 9, 1976, which does not even mention <u>Brady</u>—a case which had been decided 13 years prior.   The document provides explanations of what qualifies as "discovery" and what is "subject to discovery," and seems primarily to have been composed to assuage concerns that a then-recent move to more informal discovery procedures would not "impose burdensome duties" on the officers reading it.   MPSJ Exhibit 1, pp. 13-14.   As a policy document, purportedly to educate officers on their discovery responsibilities and obligations, it is woefully inadequate.   As a training document on <u>Brady</u>, and as evidence the LAPD trained its officers properly before or during the Vargas investigation, it is useless.   In fact, the absence of information regarding <u>Brady</u>, its scope, its requirements, or its ramifications means this document should be more appropriately considered as evidence <u>Brady</u> training was *not* performed.

The second document, dated March 1, 2000, and entitled "Impact of Employee Conduct on Credibility as a Witness," is the document to which LAPD PMK Daniel Jenks referred to in his deposition.  There are numerous problems with Defendants' use of this document to show LAPD agents and employees were properly trained on Brady during the time of the Vargas investigation.  It is legally inaccurate, as it states that there is an "ethical" obligation to turn over exculpatory information to the prosecution.  MPSJ Exhibit 2, p. 16.  Brady, of course, is not an ethical obligation, but a legal obligation one. The document also states that "[t]he burden to disclose such evidence rests solely with the prosecutor and not with the agencies who submit a case or other evidence to the prosecutorial agency."  MPSJ Exhibit 2, p. 16.  The Supreme Court, in Kyles v. Whitley, 514 U.S. 419 (1995) (decided five years before this memo was promulgated), explained definitively that Brady imposed a burden on both the prosecution *and* the police to disclose exculpatory or potentially exculpatory evidence to the defense.  See also Tatum v. Moody, 768 F.3d 806, 816 ("Where . . . *investigating officers*, acting with deliberate indifference or reckless disregard for a suspect's right to freedom from unjustified loss of liberty, fail to disclose potentially dispositive exculpatory evidence to the prosecutors, leading to the lengthy detention of an innocent man, they violate the due process guarantees of the Fourteenth Amendment.").

Most importantly, however, and as noted *ante*, this memo was published in March of 2000, the year after the Vargas investigation.  Defendants cannot use a postdated document to establish adequate training was performed at some point in the past before the document's creation.  Even if the analysis was legally sound—and it is not—it does not show what training was performed on Brady at the time of the Vargas investigation, when Defendants failed to disclose critical third-party culpability information on other sexual assaults occurring before and after Vargas was arrested.[1]

---

[1] The memo—"Impact of Employee Credibility as a Witness"—is also clearly not one designed to train LAPD officers on Brady obligations for the purposes of proper disclosure.  Rather, the focus is to warn LAPD officers that they should not falsify police reports or make false statements to LAPD investigators conducting investigations into the misconduct of fellow employees, and that an officer may be disciplined

In sum, the training and policies of the LAPD, obviously, differed so significantly from <u>Brady</u> that multiple critical pieces of exculpatory and potentially exculpatory material never made it into the hands of the prosecution or Vargas's defense team. Neither the prosecution nor Vargas received a copy of the "Serial Rapist Book," compiled by Defendants Quijano and Smith,[2] and neither the prosecution nor Vargas were informed of other sexual assaults occurring with identical *modus operandi* after Vargas was arrested but before he was convicted.   Defendants claim its agents and employees were adequately trained, but these failures show quite the opposite.

A municipality is liable when the constitutional injury to plaintiff resulted from implementation or 'execution of a government's policy or custom, whether made by its lawmakers or by those . . . said to represent official policy." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).  Additionally, municipal liability under Section 1983 may be based on a policymaker's actual or constructive knowledge of the alleged unconstitutional policy. <u>Cox v. City of Dall.</u>, 430 F.3d 734 (5th Cir. 2005); <u>see also</u> <u>Baron v. Suffolk County Sheriff's Dept.</u>, 402 F.3d 225, 243 (1st Cir. 2005).

**B.     The LAPD Failed to Train, Supervise, and/or Discipline its Employees, Violating Mr. Vargas's Constitutional Rights**

The second way in which Mr. Vargas presents questions of fact as to the LAPD's <u>Monell</u> liability is through its failures to train, supervise, and discipline.  <u>City of Canton v.</u>

---

or even fired for doing so.  MPSJ Exhibit 2, pp. 17-18.  The memo explains that the impact of <u>Brady</u> "imposes serious personnel considerations," and an officer who is found to have falsified reports or given false information "may no longer be called upon as an effective witness in a criminal matter" if they are found to have lied, because <u>Brady</u> may require evidence of that officer's prior instances of dishonesty in a subsequent, unrelated proceeding.  MPSJ Exhibit 2, pp. 17-18.  To say that this memo was used by LAPD to train its officers on the scope and obligations of Brady and its progeny is misleading to the point of being deliberately disingenuous.

[2] In fact, until very recently, Defendants made no claim that the "Serial Rapist Book" had ever been turned over to the District Attorney. The primary defenses to the <u>Brady</u> claim throughout the case have been that the "Serial Rapist Book" was not <u>Brady</u> material, that the <u>Brady</u> obligation was satisfied when Defendant Quijano made a passing comment to her "book" during the preliminary hearing, that there was no affirmative obligation to turn over <u>Brady</u> material and the defense had to ask, and that the error was harmless because defense counsel attended a line-up regarding one sexual assault for which Vargas was not charged.

<u>Harris</u>, 489 U.S. 378 (1989).   In <u>City of Canton</u>, the Supreme Court held that a municipality may be liable for the underlying constitutional violation committed by a non-policymaking employee if the municipality's policy is objectively deliberately indifferent to the likelihood a particular constitutional violation would occur.  <u>Id</u>. at 483.  The Court held that there are two ways in which plaintiff may prove this: 1) plaintiff may argue there was an obvious need to train; or, 2) constructive notice of an apparent or series of unconstitutional events without the municipality's implementation of training, supervision, or discipline; either scenario supports <u>Monell</u> Section 1983 liability.  <u>Id</u>. at 397.

Defendant LAPD conducted no training, performed inadequate to nonexistent supervision, and did not discipline its employees at any point with regard to its investigation and obligations to disclose pursuant to <u>Brady</u>, and such failures clearly violated Mr. Vargas's Constitutional rights.

As to training, LAPD PMK Daniel Jenks stated LAPD had no established training materials, established policies, or procedures, and provided no training whatsoever on <u>Brady</u> until March of 2000, after the investigation into Vargas's case. Because there were no policies or procedures, and because <u>Brady</u> was not even addressed until after Vargas's trial, then obviously LAPD employees and agents were not supervised on their obligations—and, equally obviously, nobody was disciplined for failing to honor their obligations.  Clearly, Plaintiff can establish <u>Monell</u> liability for failure to train, supervise, and discipline.

C.  **Particular Decisions or Actions Made by individuals Considered to be Final Policymakers for Defendant LAPD Directly Violated Mr. Vargas's Constitutional Rights.**

Section 1983 liability may also attach to a municipal entity by way of a single decision by an official with policymaking authority in a given area.  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 106 S. Ct. 1292 (1986) (County could be held liable for a single

decision by a county prosecutor, which authorized an unconstitutional entry onto plaintiff's clinic).

The Supreme Court has held that who constitutes a final policymaker is a question of state law. City of St. Louis v. Praprotnik, 485 U.C. 112, 113 (1988). Most Courts have determined this to mean that an individual qualifies as a final policymaker if there is no review of an individual's decision. Quinn v. Monroe Cty., 330 F.3d 1320 (11th Cir. 2003); see also Tharling v. City of Port Lavaca, 329 F.3d 422 (5th Cir. 2003); Gernetzke v. Kenosha Unified Sch. Dist. No. 1, 274 F.3d 464 (7th Cir. 2001). Additionally, an individual may be a final policymaker in one context and not another. Arendale v. City of Memphis, 519 F.3d 587 (6th Cir. 2008) (finding that the chief of police is the final policymaker for suspensions ten days or less because there is no subsequent review, but otherwise he does not because the Civil Service Commission reviews suspensions lasting more than ten days). Thus, whether an individual qualifies as a final policymaker and in what context is somewhat fluid, and many questions of fact are implicit in the determination.

Here, because of the dearth of supervision, training, or discipline in the office, the decisions of what to do on a case—for example, the conduct and supervision of internal investigators—fell to the individual employees, and without any structured supervision, these employees determined what policies they would employ or enforce. Critically, there was no subsequent review process for decisions made by investigators within the LAPD regarding Brady on a day-to-day basis, and thus these policymakers' decisions may be attributed directly to the LAPD.

Thus, critical decisions in this case were made by either Defendants Quijano or Smith, without any input, supervision, direction, or review. These included the decision not to disclose the "Serial Rapist Book" to the prosecutor, and not to disclose other sexual assaults with identical *modus operandi* committed by a third party after Mr. Vargas was arrested. These decisions and actions directly violated Mr. Vargas's Constitutional rights,

1   and they were made and performed without any supervision or oversight by anyone other

2   than themselves.

**D.   Individuals With Final Policy-making Authority Ratified Defendants Quijano's and Smith's Unconstitutional Decisions and Actions, in Violation of Mr. Vargas's Constitutional Rights.**

As yet another possible way to support a <u>Monell</u> claim, "[t]he plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action."  <u>Avalos v. Baca</u>, 596 F.3d 583, 588 (9th Cir. 2010).

Clearly, the pattern and practice of Defendant LAPD was to allow its individual detectives to make decisions about everything regarding the case, including whether to disclose <u>Brady</u> material, as it did not even bother to train its detectives on what their obligations were.  This ratification by Defendants' policymakers directly violated Mr. Vargas's Constitutional rights, and material questions of fact remain as to each of these issues which he should be given the opportunity to present to the trier of fact.

**E.   Defendants' Attempts to Narrowly Frame the Issue Are Incorrect, and Their Arguments Are Contrary to This Court's Holdings on the Prior Motion for Summary Judgment.**

Defendants argue that "[c]ontrary to any existing precedent or statute, Plaintiff's SAC claims that it was clearly established in the 1996-2000 time period at issue in this case that police officers were obligated to disclose reports of ongoing, unsolved similar crimes."  (MPSJ, p. 6.)

Not so.  In fact—and as this Court has already concluded, in denying Defendants' prior Motion for Summary Judgment and claim of qualified immunity—it was clearly established in the time period at issue that police officers were obligated to disclose exculpatory material or that information which could lead to exculpatory material pursuant to <u>Brady</u>.  Indeed, all circuits to have passed on the issue agree that, at the time of Luis Vargas's trial in 1999, a police officer's obligations to disclose exculpatory evidence was clearly defined.  <u>See, e.g.</u>, <u>Drumgold v. Callahan</u>, 707 F.3d 28, 43 (1st Cir.

2013) (In the First Circuit, "there can be no doubt that, under the line of cases running from <u>Mooney</u> and <u>Pyle</u> to <u>Brady</u>, the law was firmly settled at the time of Drumgold's criminal trial [in 1989] that a law enforcement officer may not deliberately suppress material evidence that is favorable to a defendant."); <u>Thomas v. City of Philadelphia</u>, 290 F.Supp.3d 371, 384 (E.D. Penn. 2018) (In the Second Circuit, <u>Brady</u> obligations on police officers "became clearly established in 1995, when the Supreme Court decided <u>Kyles v. Whitley</u>, 514 U.S. 419."); <u>Owens v. Baltimore City State's Attorneys Office</u>, 767 F.3d 379, 401 (4th Cir. 2014) (In the Fourth Circuit, "by 1988, a police officer violates clearly established constitutional law when he suppresses material exculpatory evidence in bad faith. Accordingly, we hold that the Officers were clearly on notice of the impermissibility of their conduct in 1988, the time of the alleged violations."); <u>Hernandez v. Terrones</u>, 397 Fed.Appx. 954, 971 (5th Cir. 2010) (In the Fifth Circuit, "it was clearly established law in 1994 that <u>Brady</u> applied to police officers on facts such as those presented in this case."); <u>Moldowan v. City of Warren</u>, 578 F.3d 351, 382 (6th Cir. 2009) (In the Sixth Circuit, <u>Brady</u> obligations are "clearly established" at least as of 1990.); <u>Steidl v. Fermon</u>, 494 F.3d 623, 632 (7th Cir. 2007) (In the Seventh Circuit, "the duty to disclose was clearly established as of 1979 and 1980."); <u>McMillan v. Johnson</u>, 88 F.3d 1554 (11th Cir. 1996) (In the Eleventh Circuit, "in 1987 and 1988 a police officer had a clearly established duty under <u>Brady</u> to not intentionally withhold exculpatory or impeachment evidence from the prosecutor").

The Ninth Circuit has held that an individual officer's <u>Brady</u> obligations have existed and been clearly established since at least 1978.  In fact, this issue was decisively litigated against the County of Los Angeles not more than four years ago in a case arising out of this very Court, in front of Your Honor: <u>Carrillo v. County of Los Angeles</u>, 798 F.3d 1210 (9th Cir. 2015).  In that case—which, like the instant case, turned on whether <u>Brady</u> obligations on police officers were clearly established by the time of the investigation—the Ninth Circuit agreed with Your Honor's determination, and elaborated:

The officers argue the law did not clearly establish that they were bound by <u>Brady</u> at all in 1984 and 1991. This contention lacks merit because it was clearly established well before the events in these cases that police officers were bound to disclose material and exculpatory evidence.

<u>Brady</u> held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. This holding was an "extension" of <u>Mooney v. Holohan</u>, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), which held the government's presentation of testimony it knew to be false, as well as its suppression of evidence that would have impeached that testimony, could require reversal of a conviction. <u>See</u> <u>Brady</u>, 373 U.S. at 86, 83 S.Ct. 1194.

. . .

Just one year after <u>Brady</u>, the Fourth Circuit held police officers as well as prosecutors were bound to disclose material, exculpatory evidence, explaining:

> it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure. . . . The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused. We cannot condone the attempt to connect the defendant with the crime by questionable inferences which might be refuted by undisclosed and unproduced documents then in the hands of the police.

<u>Barbee v. Warden</u>, 331 F.2d 842, 846 (4th Cir.1964).

Requiring police officers as well as prosecutors to disclose material and exculpatory evidence follows logically from <u>Brady's</u> rationale. "As far as the Constitution is concerned, a criminal defendant is equally deprived of his or her due process rights when the police rather than the prosecutor suppresses exculpatory evidence because, in either case, the impact on the fundamental fairness of the defendant's trial is the same." <u>Moldowan v. City of Warren</u>, 578 F.3d 351, 379 (6th Cir.2009). Because police officers play an essential role in forming the prosecution's case, limiting disclosure

obligations to the prosecutor would "undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands." United States v. Blanco, 392 F.3d 382, 388 (9th Cir.2004) (quoting United States v. Zuno-Arce, 44 F.3d 1420, 1427 (9th Cir.1995)).

This circuit adopted Barbee's logic well before the investigations here. In United States v. Butler, 567 F.2d 885, 891 (9th Cir.1978), we rejected the government's argument that no Brady violation occurred because investigative agents, and not the prosecutor, were responsible for the nondisclosure of promises made to certain prosecution witnesses, explaining:

> [t]he prosecutor is responsible for the nondisclosure of assurances made to his principal witnesses even if such promises by other government agents were unknown to the prosecutor. *Since the investigative officers are part of the prosecution*, the taint on the trial is no less if they, rather than the prosecutor, were guilty of nondisclosure.

Id. (citing Barbee, 331 F.2d at 846) (emphasis added). Butler thus made unmistakably clear that police officers and prosecutors alike share an obligation to disclose "pertinent material evidence favorable to the defense." Id. at 888 (quoting United States v. Gerard, 491 F.2d 1300, 1302 (9th Cir.1974)).

The officers argue here that Butler did not clearly establish that officers are subject to Brady because it described the disclosure obligation in terms of the prosecutor rather than the police officer. But Butler undisputably put police officers on notice that their failure to disclose Brady information would constitute a violation the defendant's constitutional rights. It "taught police officers how to conform their conduct to the law," and "[a] police officer acting after the issuance of th[is] decision [ ] ... could not have thought that the suppression of material exculpatory evidence would pass constitutional muster." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 400 (4th Cir. 2014) (explaining that, even though circuit cases including Barbee described the duty to disclose in terms of the prosecutor, they put officers on notice that withholding of Brady material would violate clearly established law).

Because "clearly established law" includes "controlling authority in [the defendants'] jurisdiction," Butler clearly established in 1978 that police

officers have a duty to disclose Brady material. <u>See</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); <u>Boyd v. Benton Cnty.</u>, 374 F.3d 773, 781 (9th Cir.2004) (explaining that sources of "clearly established law" include decisions of the Supreme Court or this circuit); <u>see also</u> <u>Hope v. Pelzer</u>, 536 U.S. 730, 741–45, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (holding defendants' conduct violated clearly established law in light of binding circuit precedent).

<u>Carrillo v. County of Los Angeles</u>, supra, 798 F.3d at 1219-1221.

Defendants attempt to narrow the focus of the inquiry to whether it was "clearly established . . . that police officers were obligated to disclose reports of ongoing, unsolved similar crimes" at the time of the Vargas investigation.  MPSJ, p. 6.  Obviously, this Court's prior determination, denying Defendants' prior Motion for Summary Judgment on qualified immunity grounds—wherein Defendants asked the Court to narrow the inquiry in the same manner—should have indicated to Defendants that this is not the question or viable line of argument.  Indeed, as other courts have stated, the question of whether rights are "clearly established" for the purposes of Section 1983, <u>Brady</u>, and qualified immunity is quite different from Defendants allege:

> What remains is the question whether this right was clearly established, at the requisite level of specificity, at the time the ISP Officials acted. A plaintiff can show that a right is "clearly established" by statute or constitution in at least two ways: (1) he can point to an analogous case establishing the right to be free from the conduct at issue; or (2) he can show that the conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." <u>Smith v. City of Chicago</u>, 242 F.3d 737, 742 (7th Cir.2001).

<u>Steidl v. Fermon</u>, <u>supra</u>, 494 F.3d at 632.  There are numerous analogous cases, some of which are cited above, which establish Mr. Vargas's right to be free from the unconstitutional conduct in which Defendants engaged during this investigation.  Their conduct—failing to train its officers on how to handle <u>Brady</u> material, failing to supervise officers in the handling of <u>Brady</u> material, failing to discipline officers when they mis-handled <u>Brady</u> material, and the abject failure of the individual officers to turn over said

1  material—was clearly egregious, and unquestionably violated Mr. Vargas's rights.  As such,

2  Defendants have failed to show they are entitled to summary judgment.

## II.

### The Defendants Are Not Entitled to Summary Judgment on Plaintiff's Claim of Respondeat Superior Liability

6  Defendants also allege that they are entitled to summary judgment on Mr. Vargas's

7  claim of *respondeat superior* liability.[3]  They argue that, pursuant to Cal. Gov. Code §

8  954.4, Mr. Vargas's state law claim should be barred.  Not so.

9  Section 954.4 provides that no suit for money or damages may be brought against

10  a public entity until a written claim has been presented to that entity and been acted upon

11  or has been rejected.  Cal. Gov. Code § 954.4.  A claim presented before a public entity

12  is required to show: (1) the date, place, and other circumstances that gave rise to the claim;

13  (2) a general description of the injury, damage, or loss incurred; and (3) the names of the

14  public employees causing the injury, damage, or loss.  Cal. Gov. Code § 910.  The

15  purpose of the statute is to give the public entity sufficient notice for it to investigate the

16  claims and settle them, not to eliminate meritorious ones.  Stockett v. Ass'n of Cal. Water

17  Agencies Joint Powers Ins. Auth., 34 Cal.4th 441, 446 (2004).  A claim need not specify

18  each particular act that caused injury.  Id. A complaint with additional claims and facts

19  beyond those given in a claim to a public entity is not defective so long as the complaint

20  is not based on an entirely different set of facts.  Id. "Only where there has been a

21  complete shift in allegations, usually involving an effort to premise civil liability on acts or

22  omissions committed at different times or by different persons than those described in

23  the claim, have courts generally found the complaint barred." Id. (citation and quotations

24  omitted). Where the complaint merely elaborates detail to a claim, and is predicated on

---

26  [3] It is not entirely clear where Defendants' argument on this issue begins.  Defendants' Table of Contents
27  lists a Section IV, starting on page 7 and entitled "PLAINTIFF'S THIRD CAUSE OF ACTION FOR
STATE LAW RESPONDEAT SUPERIOR LIABILITY FAILS AS A MATTER OF LAW."  No
such section IV exists, although there are a few sentences raising the issue on pages 7 and 8.  Out of an
28  abundance of caution, Vargas will address these failing arguments here.

the same fundamental actions, courts generally find that the claim fairly reflects the facts pled in the complaint. Id.

In the instant case, Plaintiff Luis Vargas alleged in his Notice of Claim that LAPD failed to disclose Brady material related to the Teardrop Rapist and the unrelated sexual assaults which were later linked through DNA to the crimes for which Vargas was convicted.[4]  LAPD failed to train, supervise, and enact proper policies regarding Brady,[5] the sharing of information among districts and with fellow officers,[6] and failed "to train, supervise, and/or discipline its employees and agents, including Defendants, regarding their obligations to document and disclose exculpatory evidence pursuant to their Brady obligations."[7]  The operative facts in the Notice of Claim describe the dates, places, and other circumstances that gave rise to Mr. Vargas's claims; provide detailed descriptions of the injury, damage, or loss incurred; and name the names of the public employees who caused the injuries to Mr. Vargas.

These allegations clearly provided more than "sufficient notice for [Defendants] to investigate the claims and settle them."  Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., supra, 34 Cal.4th at 446.  The complaint alleges no new facts, much less entirely different ones, than the ones presented in the claim.  Defendants are wrong, and they are not entitled to summary judgment on this claim.

## III.

### Plaintiff's Opposition is Timely

Any contention Defendants may make that Plaintiff's Opposition is untimely is without merit and demonstrably false.  At the Status Conference held on April 15, 2019, the Court ordered Defendants to file their Motion no later than May 15, 2019.  No briefing schedule was established by the Court at that time, nor did the Court set a

---

[4] Claim for Damages, MPSJ Exhibit 4A, p. 17.
[5] MPSJ Exhibit 4A, p. 16.
[6] MPSJ Exhibit 4A, p. 17.
[7] MPSJ Exhibit 4A, p. 18.

specified briefing schedule in its Minute Order confirming Defendants' May 15, 2019 deadline.  See Dkt. No. 188.

Although informal conversation may have taken place with the Clerk following the hearing and after Judge Wilson left the bench, such informal discussion is not tantamount to a court order.

Thereafter, Defendants filed their Motion on May 15, but due to scheduling it to be heard on June 10, 2019, failed to allow Plaintiff the requisite 28-day notice requirement as prescribed by Local Rule.  On that same day, counsel for Plaintiff reached out to Defendants to respectfully request that the Motion be rescheduled in accordance with the Local Rule's minimum notice requirement.  See Boon Decl. at ¶ 4.  Defendants refused.

Soon thereafter, the Court *sua sponte* rescheduled Defendants' Motion to be heard on June 17, 2019, likely because it had been filed without affording Plaintiff the minimum notice requirement.  See Dkt. No. 201.  Again, this Minute Order did not set a specified briefing schedule, lending itself to the fact that briefing was to be set by applicable Local Rule.

Pursuant to Local Rule 7-9, Plaintiff's Opposition is therefore due twenty-one (21) prior to the hearing, which is May 27, 2019 and is when the instant Opposition is submitted.  <u>See</u> Cent. Dist. L.R., R 7-9.  Any contention by Defendant that a specified briefing schedule was established and violated flies in the face of this record.

Finally, the fact that the filing deadline is a court holiday has no bearing on Plaintiff's filing deadline.  According to the Rutter Guide: Federal Civil Procedure Before Trial at § 12:102.7, "where local rule measures time backwards from the hearing date, it is uncertain whether the FRCP 6(a)(3) extension until the 'next day' means the day preceding or the day following the legal holiday.  (For example, where local rule requires service and filing of opposition papers 17 days before the hearing date, and that day is a Sunday, whether the 'next day' is the preceding Friday or the following Monday.)  There is no known authority on point.

1    Thus, in an abundance of caution, Plaintiff submits the instant briefing on the legal

2    holiday, which is the date on which the briefing would be due but for the Memorial Day

3    holiday.

4                                        **IV.**

5                                    **Conclusion**

6    The Motion for Partial Summary Judgment should be denied.

7

8                                              Respectfully submitted,

9

10

11

12   Dated:    _05/27/19_

13                                              _____
                                                **ALEXANDER SIMPSON**
                                                Counsel for Plaintiff
14                                              **LUIS LORENZO VARGAS**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPP. TO MOTION FOR PARTIAL SUMM. J'MENT          |   2:16-CV-08684-SVW-AFM